23 A.3d 980

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Edward WATTS, Appellee.**

Supreme Court of Pennsylvania.

Submitted April 26, 2010.

Decided April 28, 2011.

Hugh J. Burns, Jr., Ronald Eisenberg, Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

Edward Watts, pro se.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN JJ.

## *OPINION*

Justice ORIE MELVIN.

We granted allowance of appeal to determine whether a judicial opinion qualifies as a previously unknown "fact" capable of triggering the timeliness exception codified at section 9545(b)(1)(ii) of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, which applies if "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." The Superior Court found that a serial PCRA petition was timely under section 9545(b)(1)(ii) because it had been filed less than sixty days after we rendered our decision in *Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264 (2007), and the petitioner, Edward Watts, exercised due diligence in ascertaining the status of his counseled direct appeal, which was dismissed in 2002 for failure to file a docketing statement. For the reasons that follow, we hold that the Superior Court misapplied section 9545(b)(1)(ii) and the PCRA court properly determined that Watts's petition was untimely filed. Accordingly, we reverse the Judgment of the Superior Court.

Watts was convicted of first-degree murder and numerous other offenses on November 5, 2001 and sentenced to life imprisonment. He filed a timely direct appeal, which, as noted, the Superior Court dismissed for failure to file a docketing statement. Defense counsel was directed to certify to the court within ten days that he had notified Watts of the dismissal, but he never filed the required certification.

Throughout 2002 and 2003, Watts, who is illiterate, sought information regarding the status of his direct appeal. On August 14, 2003, the Superior Court advised him that the appeal had been dismissed in August 2002 because his attorney neglected to file a docketing statement. Within sixty days of receiving that notice, Watts filed a *pro se* PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc.* New counsel was appointed and filed a "no merit" letter on May 25, 2004, averring that the petition was untimely and that no filing exceptions were applicable. The PCRA court agreed and dismissed the petition on July 29, 2004. Watts then filed a *pro se* appeal.

The Superior Court affirmed on August 9, 2005 in an unpublished opinion. Observing that the PCRA's filing restrictions are mandatory and jurisdictional in nature, the Superior Court found that it was constrained to deny relief because the petition was untimely on its face: Watts's judgment of sentence became final on September 3, 2002, and his petition was not filed until October 1, 2003.[1] It also refused to apply the timeliness exception at section 9545(b)(1)(ii) on the rationale that Watts failed to exercise due diligence in determining the status of his appeal and in presenting his claim on collateral review. As to the latter point, the court noted that "by [his] own admission, [Watts] still had more than two weeks to file a timely PCRA petition when he discovered that his direct appeal had been dismissed, yet failed to act in a timely fashion." *Commonwealth v. Watts,* 885 A.2d 587 (Pa.Super.2005) (unpublished memorandum at 6).

Watts did not appeal that decision. Instead, he filed a second PCRA petition, on December 5, 2007, raising the same issue presented in his first petition, *i.e.,* that his direct appeal rights should be reinstated because his attorney abandoned him on direct appeal. He conceded that his petition was untimely but asserted that in light of our decision in *Bennett,*

1. As a general rule, a PCRA petition must be filed within one year of the date on which the judgment of sentence becomes final. *See* 42 Pa.C.S. § 9545(b)(1). Thus, in order to be considered timely, Watts's first petition had to be filed by September 3, 2003.

84

his original claim could be reviewed on the merits pursuant to section 9545(b)(1)(ii). After giving Watts appropriate notice of its intention to dismiss the petition without a hearing, the PCRA court denied relief on May 15, 2008.

Watts appealed to the Superior Court, which reversed and remanded for reinstatement of his appellate rights. Unlike the first Superior Court panel, which held that Watts should have inquired about the status of his direct appeal much earlier, the second panel found that Watts exercised due diligence at all times. In doing so, the second panel emphasized that Watts is illiterate, that he was completely abandoned by counsel on direct appeal, that he initiated efforts to ascertain the status of the appeal in 2002, and that he filed his first PCRA petition within sixty days of the date on which he discovered that the appeal had been dismissed. Given these facts, the second panel concluded that this case bore many similarities to *Bennett*, and, therefore, it would be unjust to deny relief to an individual whose first PCRA petition was denied based on the faulty premise that appellate rights can never be restored after the one-year filing deadline has expired. Accordingly, the second panel declared Watts's second petition timely under section 9545(b)(1)(ii) because it was filed less then sixty days after *Bennett* was published.

We granted the Commonwealth's petition for allowance of appeal to determine whether subsequent decisional law such as *Bennett* can amount to a new "fact" under section 9545(b)(1)(ii) of the PCRA.[2] As the appeal presents a question of law, we exercise plenary review. *See Commonwealth v. Brown*, 596 Pa. 354, 943 A.2d 264, 266 (2008).

The PCRA is the sole means of obtaining collateral relief on issues that are cognizable under the statute, *see* 42 Pa.C.S. § 9542, and we have held on numerous occasions that the PCRA time restrictions are jurisdictional in nature; conse-

2. In its brief, the Commonwealth urges us to address various aspects of the majority opinion in *Bennett* on the theory that the opinion contains inaccurate statements about the collateral review process. Commonwealth brief at 11 n. 6. We decline this request because it encompasses topics that are outside the scope of our grant of allowance of appeal.

quently, Pennsylvania courts may not entertain untimely PCRA petitions. *See Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157, 1161 (2003); *Commonwealth v. Brown,* 596 Pa. 354, 943 A.2d 264, 267 (2008). Furthermore, we have observed that the statute "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Robinson,* 837 A.2d at 1161 (quoting *Commonwealth v. Eller,* 569 Pa. 622, 807 A.2d 838, 845 (2002)). The time restrictions in the existing statutory scheme are reasonable and accord finality to the collateral review process. *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 642–43 (1998).

█ As noted above, the one-year filing deadline is not absolute. The PCRA contains three narrow exceptions that enable petitioners to assert claims after the deadline has passed. The exception at issue herein, 42 Pa.C.S. § 9545(b), states in relevant part:

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

. . . .

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

. . . .

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within sixty days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b)(1)-(2).

█ The Commonwealth contends that the Superior Court improperly characterized our decision in *Bennett* as a newly-discovered fact under section 9545(b)(1)(ii) in order to circumvent the PCRA time-bar and re-examine a claim that was previously litigated in 2005. The decision cannot stand, the

Commonwealth argues, because it defies logic and conflicts with *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978 (2008), where we held that the grant of a new trial to the petitioner's codefendant did not constitute a newly-discovered fact within the meaning of section 9545(b)(1)(ii). The Commonwealth asserts that while a judicial opinion may establish a new theory or method of obtaining relief on collateral review, it does not fall within the purview of section 9545(b)(1)(ii) because it does not form an independent basis for a new claim; the legal principles derived from the opinion must be applied to a set of pre-existing facts.[3] *See* Commonwealth brief at 10. Consistent with this view, it maintains that the Superior Court erred in finding that Watts's second PCRA petition was timely under section 9545(b)(1)(ii) because his claim is predicated not upon *Bennett* but upon the dismissal of his direct appeal, which was revealed to him in 2003.

Watts replies that his second PCRA petition should be reviewed on the merits because his first petition was erroneously denied under pre-*Bennett* case law which held that appellate rights could never be restored after the PCRA filing deadline had expired. Since this Court modified that rule in *Bennett*, he argues that *Bennett* qualifies as a previously-unknown "fact" under section 9545(b)(1)(ii). To hold otherwise, Watts contends, would unfairly deprive him of his constitutional right to file a direct appeal from the judgment of sentence. In leveling this argument, Watts maintains that he made every effort to obtain relief through his first PCRA petition, but, as an illiterate prisoner with limited access to legal research materials, he could not have foreseen our ruling in *Bennett*, which announced a significant departure from prior decisional law applying the PCRA time-bar.

---

**3.** In arguing this point, the Commonwealth concedes that under appropriate circumstances, a judicial opinion can provide an independent basis for a new PCRA claim pursuant to 42 Pa.C.S. § 9545(b)(1)(iii), which creates a limited exception for the assertion of "a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in [section 9545(b)(1)] and has been held by that court to apply retroactively." However, as the *Bennett* Court did not recognize a new constitutional right, that provision is clearly inapplicable here.

We begin our analysis with *Bennett*. In that case, the defendant was convicted of first-degree murder and sentenced to life imprisonment in 1993. No direct appeal was filed. In 1995, the defendant filed a timely post-conviction petition under the predecessor to the PCRA claiming, *inter alia,* that his trial counsel was ineffective for failing to object to a jury instruction and for failing to file a notice of appeal following imposition of sentence. The petition was dismissed for lack of merit, and the defendant filed a timely *pro se* notice of appeal. Counsel was appointed to represent him, but the appeal was subsequently dismissed due to counsel's failure to file a brief. The Superior Court did not retain jurisdiction, and the defendant did not petition this Court for review.

The defendant in *Bennett* filed a second *pro se* PCRA petition, on October 27, 2000, well beyond the one-year filing deadline, and asserted that his PCRA appellate rights should be reinstated *nunc pro tunc* because all prior counsel were ineffective. The PCRA court granted relief, but the Superior Court subsequently quashed the appeal, reasoning that the PCRA court lacked jurisdiction to restore the defendant's appellate rights because the petition was untimely. We granted review and remanded for further proceedings, holding that when a petitioner claims he was abandoned on appeal by former counsel, he may successfully invoke section 9545(b)(1)(ii) if he can establish that the facts upon which his claim is predicated were unknown to him and could not have been discovered through the exercise of due diligence. *Bennett*, 930 A.2d at 1271. In so doing, we emphasized that any petition invoking the unknown facts exception must be filed within sixty days of the date on which the claim first could have been presented. *Id.* at 1272.

The Commonwealth argues that *Bennett* cannot be construed as a fact capable of triggering section 9545(b)(1)(ii) because the opinion does not provide an independent basis for obtaining post-conviction relief; rather, it established a new legal principle that applies in limited circumstances where a petitioner who exercised due diligence in checking the status of a counseled appeal asserts a claim that meets the pleading

requirements of section 9545(b)(1)(ii), and the petition is filed within the sixty-day period outlined in subsection (b)(2). Watts cannot invoke *Bennett,* the Commonwealth asserts, because his claim is predicated on direct appeal counsel's failure to file a docketing statement, a fact that was brought to Watts's attention on August 14, 2003. Accordingly, the Commonwealth maintains that the Superior Court's ruling is flawed, as evidenced by the fact that it conflicts with our decision in *Commonwealth v. Hackett,* 598 Pa. 350, 956 A.2d 978 (2008).

In *Hackett,* defendant Richard Hackett and three codefendants were tried together for a double homicide committed in Philadelphia. During jury selection, codefendant Marvin Spence raised an objection that the prosecutor, Jack McMahon, inappropriately struck African American jurors in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Hackett, who is Caucasian, did not make a *Batson* objection. All four defendants were convicted of first-degree murder, and Hackett and Spence both received the death penalty. We subsequently rejected Hackett's direct appeal and upheld his death sentence.

Hackett filed a timely PCRA petition, on January 14, 1997, alleging five claims of ineffective assistance of trial counsel, one of which was premised on counsel's failure to lodge a *Batson* objection. The PCRA court denied relief, and we affirmed. Hackett then filed a second PCRA petition, on August 15, 2002, alleging that his execution would violate the Eighth Amendment's prohibition against cruel and unusual punishment. On May 3, 2004, Hackett filed a supplemental petition arguing that he was entitled to a new trial under *Batson* because Spence had recently secured a new trial based on evidence that Jack McMahon employed discriminatory tactics during jury selection. Unlike Hackett, whose *Batson*-related ineffectiveness claim was rejected due to an insufficient evidentiary record, Spence prevailed on his *Batson* claim because it was premised on a videotaped lecture released by the Philadelphia District Attorney's Office in April 1997 that

showed McMahon advocating racial and gender-based discrimination in the selection of jurors.

The PCRA court granted Hackett a new trial pursuant to *Batson,* concluding that his supplemental petition was timely under section 9545(b)(1)(ii) because it was filed within sixty days of the date on which Spence received a new trial. The Commonwealth appealed, and we granted review. The Commonwealth argued that Hackett's petition was untimely because his *Batson* claim was predicated on the discovery of the McMahon videotape and not, as the PCRA court found, on the March 22, 2004 ruling that awarded Spence a new trial. As the videotape was made public in 1997 and Hackett's supplemental petition was not filed until 2004, the Commonwealth maintained that Hackett failed to exercise due diligence in ascertaining the facts upon which his claim was based.

After establishing that Hackett's 2002 and 2004 PCRA petitions were facially untimely, we credited the Commonwealth's position, stating as follows:

[W]e agree with the Commonwealth that [Hackett] has failed to plead and prove the applicability of Section 9545(b)(1)(ii) and therefore the PCRA court had no jurisdiction to grant relief. Simply put, the facts upon which the *Batson* claim were predicated were ascertainable by [Hackett] upon the exercise of due diligence when the McMahon tape was released in April of 1997. There was nothing preventing [Hackett] from raising his *Batson* claim within sixty days thereafter. [Hackett]'s attempt to circumvent the statutory language by asserting that the factual predicate of his claim is actually the PCRA court's ruling in *Spence* is specious. A PCRA petitioner cannot avoid the one-year time bar by tailoring the factual predicate of the claim pled in his PCRA petition in a way that unmistakably misrepresents the actual nature of the claim raised. Here, [Hackett]'s *Batson* claim is not dependent upon what occurred in the PCRA matter of his codefendant and could have independently been raised by [Hackett] in a timely manner. [Hackett], however, chose not to raise such claim until years after the McMahon tape was released to the

public. As the *Batson* claim was untimely, the PCRA court lacked jurisdiction to grant relief.

*Hackett,* 956 A.2d at 984 (citations omitted).

In the case at bar, we find that Watts, like Hackett, is improperly attempting to tailor the factual predicate of his claim to circumvent the PCRA filing deadline. Watts's claim is premised upon the dismissal of his direct appeal, which was brought to his attention on August 14, 2003, more than two weeks before the deadline expired. Notwithstanding his illiteracy, Watts had ample time to file another timely PCRA petition seeking restoration of his direct appeal rights, yet he inexplicably failed to do so. Instead, he filed an untimely petition that was rejected by the Superior Court in 2005 under the prevailing view that Pennsylvania courts could not reinstate a petitioner's appellate rights beyond the one-year filing period. Unlike the defendant in *Bennett,* however, Watts did not petition this Court for further review, thereby foreclosing any possibility of having his direct appeal rights restored. The Superior Court's 2005 ruling is final, and Watts cannot resurrect the issue simply by alluding to *Bennett.* 42 Pa.C.S. § 9543(a)(3) (to be eligible for PCRA relief, the petitioner must plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated or waived); 42 Pa.C.S. § 9544(a)(3) (an issue has been previously litigated if it was raised and decided in a proceeding collaterally attacking the conviction or sentence). To hold otherwise would defy the statutory language and violate the prohibition against judicially-created equitable exceptions to the PCRA time-bar.

The second Superior Court panel's decision to grant a *nunc pro tunc* appeal in this scenario evinces a presumption that *Bennett* may be viewed as a new "fact" sufficient to overcome the time-bar whenever appellate rights have been lost due to ineffective assistance of counsel. However, there is nothing in *Bennett* or section 9545(b)(1)(ii) to support that conclusion. The *Bennett* Court emphasized that any petitioner requesting a *nunc pro tunc* appeal based on an abandonment theory had to show due diligence and establish that the petition was filed

in accordance with subsection (b)(2). We did not authorize courts to grant post-conviction relief in every instance where a petitioner has been abandoned by appellate counsel, and we neither stated nor implied that petitioners could circumvent the statutory filing deadline by citing *Bennett* as an independent basis for a new claim of ineffectiveness. The latter proposition is absurd because section 9545(b)(1)(ii) applies only if the petitioner has uncovered facts that could not have been ascertained through due diligence, and judicial determinations are not facts.

As the Commonwealth accurately notes in its brief, the Superior Court has confused the concepts of "law" and "fact." Black's Law Dictionary explains the distinction thusly: "Law is a principle; fact is an event. Law is conceived; fact is actual. Law is a rule of duty; fact is that which has been according to or in contravention of the rule." Black's Law Dictionary 592 (6th ed.1991). Put another way, "A 'fact,' as distinguished from the 'law,' ... [is that which] is to be presumed or proved to be or not to be for the purpose of applying or refusing to apply a rule of law." *Id.* Consistent with these definitions, an in-court ruling or published judicial opinion is law, for it is simply the embodiment of abstract principles applied to actual events. The events that prompted the analysis, which must be established by presumption or evidence, are regarded as fact. Thus, viewed in the appropriate manner, our publication of *Bennett* did not trigger section 9545(b)(1)(ii) because it was not an event that spawned a new claim. As noted above, the issue herein pertains to the dismissal of Watts's direct appeal, which was addressed on the merits in a separate collateral proceeding that ended in 2005. Upon reviewing the instant PCRA petition, the PCRA court correctly determined that it lacked jurisdiction to grant relief because the petition was untimely, and no filing exceptions were applicable.

Based on the forgoing analysis, we hold that subsequent decisional law does not amount to a new "fact" under section 9545(b)(1)(ii) of the PCRA. Accordingly, we reverse the judgment of the Superior Court.

Chief Justice CASTILLE and Justices SAYLOR and EAKIN join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice BAER files a concurring opinion in which Justice McCAFFERY joins.

Justice TODD concurs in the result.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion in its entirety, writing only in response to Mr. Justice Baer's Concurring Opinion, as follows.

The concurrence posits a factual circumstance, not present here, under which the concurrence believes it would be appropriate to build upon and expand this Court's decision in *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007), construing the "unknown facts" exception to the PCRA's [1] time-bar. *See* 42 Pa.C.S. § 9545(b)(1)(ii) (providing exception to PCRA's one-year time bar when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). *Bennett* was a 4–3 decision; and I continue to believe that the dissenting views in that case, which I joined—and particularly the expression of Mr. Justice Saylor, which was grounded in the plain meaning of the word "claim"—were far more persuasive than the majority view, which I continue to view as ends-driven and implausible. *Bennett* has caused enough mischief; indeed, misperception of *Bennett's* import occasioned the necessity for review and correction here. The continuing vitality of *Bennett* is not before the Court, and I particularly caution the courts below that nothing in the Court's decision today should be read as an endorsement or reaffirmation of *Bennett*, much less an invitation to expand upon that decision. For my own part, I believe that any further consideration of *Bennett*-derived constructions of the PCRA's time-bar, such as the exception imagined by the concurrence, should be joined with an express reconsideration of *Bennett* itself, which would

1. Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546.

afford an opportunity to eradicate the underlying problems that case has generated.[2]

Justice BAER, concurring.

I agree with the Majority that, in general, the issuance of a judicial opinion does not qualify as a previously unknown "fact" triggering the PCRA's time-bar exception set forth at 42 Pa.C.S. § 9545(b)(1)(ii).[1] I write separately to recognize a possible exception to this rule, where the issuance of a judicial opinion in one's own case triggers the exception. For example, if a defendant files a PCRA appeal reasonably believing that his counsel is advancing his interests, but then learns from the appellate court in an opinion that counsel's actions were in fact so ineffective as to constitute abandonment, resulting in a waiver of all claims, then in my view the court's declaration of abandonment could be a "fact" to which the timeliness exception applies. In short, a defendant may not know that counsel has abandoned him until an appellate court declares it to be so.

Here, however, Watts is not relying on an appellate decision in his own case. Rather, he is relying on this Court's 2007 opinion in *Bennett*,[2] an unrelated case published long after

**2.** I expressed a similar viewpoint in *Commonwealth v. Brown*, 596 Pa. 354, 943 A.2d 264, 269–70 & n. 3 (2008) (Castille, C.J., concurring) ("I continue to believe that *Bennett* was wrongly decided. If the Court were to embark upon the wholesale reconsideration of existing time-bar decisions . . . I would begin with *Bennett*..")

**1.** (b) TIME FOR FILING PETITION.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that: [. . .]

 (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented. 42 Pa.C.S. 9545(b)(1)(ii), (2).

**2.** In *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007), we held that the § 9545(b)(1)(ii) exception applied where Bennett learned via a letter from the Superior Court that his PCRA appeal had been dismissed for failure to file a brief, and where Bennett filed a second

Watts had learned in 2003 that counsel had abandoned him. As the Majority aptly explains, this distinction is critical. Much like the defendant in *Hackett*,[3] who improperly attempted to use his co-defendant Spence's legal victory as a trigger for the timeliness exception, so too is Watts improperly relying on Bennett's legal victory as a trigger.

The mere fact that Watts and Bennett raised similar claims is immaterial. As the Majority notes, Watts had the opportunity to "become" Bennett by filing an appeal to this Court raising the same arguments that Bennett did. He failed to do so, however. Instead, he waited for Bennett's vanguard success in this Court, and then attempted to capitalize on it. Section 9545(b)(1)(ii) is not designed to reward this type of piggyback litigation; instead, it is designed to provide a limited timeliness exception for after-discovered facts in one's own case. Thus, while I agree that Watts's current PCRA petition is time-barred, for the reasons set forth above I would not issue a sweeping pronouncement that subsequent decisional law can never trigger the "after-discovered fact" exception to the PCRA's time bar.[4]

Justice McCAFFERY joins this concurring opinion.

PCRA petition within 60 days of receiving the letter. We also held that Bennett acted with due diligence in determining the status of his case. In *Bennett*, the Superior Court's letter simply reported the facts that had previously occurred: counsel had failed to file a brief, and the appeal had been dismissed as a result. As noted above, however, I can envision a scenario where a judicial opinion not only reports certain undisputed core facts (such as the actions of counsel), but also declares the legal significance of those facts (such as waiver or abandonment).

3. *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978 (2008).

4. Of course, the PCRA recognizes a timeliness exception based on the issuance of certain court decisions. *See* 42 Pa.C.S. § 9545(b)(1)(iii) (providing a timeliness exception where "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.") As the Majority properly notes, that subsection does not apply here because *Bennett* did not recognize a new constitutional right.

Like the Majority, I note that it would have been best for Watts to have filed his first PCRA petition between August 14, 2003 (when he

 

learned from the Superior Court that his direct appeal had been dismissed) and September 3, 2003 (when the one-year deadline for filing a PCRA petition expired). *See* Majority Opinion at 90, 23 A.3d at 985–86. If Watts had filed his PCRA petition within this 20–day window, he would not have faced any of the timeliness hurdles that he faces now. Instead, he filed the petition on October 1, 2003, rendering it facially untimely. This delay was unfortunate, but not absolutely fatal. Watts was forced to take the far more difficult path of invoking § 9545(b)(1)(ii) and raising a *Bennett*-type argument that he exercised due diligence, discovered his abandonment, and filed his petition within 60 days thereof. Unfortunately for Watts, the Superior Court did not presage *Bennett* and accept this argument. Given that loss in the Superior Court, it was incumbent on Watts to take his *Bennett*-type argument to this Court, but he failed to do so.