J-S29019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :          PENNSYLVANIA
                                           :
           v.                          :
                                           :
                                           :
GARY LEE GERBER JR.            :
                                           :
           Appellant             :   No. 2067 EDA 2020

Appeal from the PCRA Order Entered September 17, 2020,
in the Court of Common Pleas of Monroe County,
Criminal Division at No(s): CP-45-CR-0000112-2007.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED NOVEMBER 10, 2021**

Gary Lee Gerber, Jr. appeals from the order denying his second petition pursuant to the Post Conviction Relief Act ("PCRA") as untimely filed. 42 Pa.C.S.A. §§ 9541-46. We affirm.

On December 16, 2006, police charged Gerber with criminal homicide and related charges following an incident that resulted in the death of Robert Hagan ("the victim"). When addressing Gerber's direct appeal, we cited the trial court's detailed summary of the pertinent facts and trial proceedings as follows:

> The majority of the facts are not in dispute: in the early morning hours of August 13, 1993, [Gerber] was alone[] with the victim in the victim's vehicle while parked along Rimrock Road in Monroe County. At some point while inside

_____

[*] Former Justice specially assigned to the Superior Court.

the vehicle, [Gerber] "lashed out" on the victim stabbing him four times in the back . . . [Gerber] admitted stabbing the victim. [Gerber] also cut the victim's throat in a manner that showed no sign of hesitation; the victim's neck wound was characterized as a superficial wound because no major arteries were cut, but the area had many blood vessels which have resulted in fairly profuse bleeding. These stab wounds were potentially lethal because [of] the amount of hemorrhaging and blood loss the victim suffered, as well as his collapsed lung.

[At trial, Gerber testified he was inebriated and parked his pickup truck in a parking lot. Two men approached, told him he could not park there and they would give him a ride, and helped him into what he believed was the victim's car. The next thing Gerber remembered was waking up in the victim's car, his pants and his underwear were pulled down, somebody was on top of him and trying to force something into him, and he felt excruciating pain. On appeal, Gerber claims the victim was trying to homosexually rape him.]

After being stabbed, the victim exited the car and fled. The victim's body was eventually found on a bridge on Rimrock Road approximately 290 feet away from where [Gerber] stabbed [him]. Blood drops were found in various locations along the road leading toward the bridge on Rimrock Road. [I]t was determined [the victim] had suffered massive injuries to his head, *i.e.*, a crushed skull and brain, and massive injuries to his torso, *i.e.,* a crushing injury to his entire side of his chest. These injuries were consistent with him being run over by a car.

[Gerber] stated that, after he stabbed the victim, he got into the driver's seat of the victim's vehicle and drove up Rimrock Road toward Route 611, which is the same direction where the victim's body was found. Thereafter, [Gerber] drove the vehicle to his father's junkyard and wiped down the interior of the car to clean off the blood. [Gerber] stated that he only cleaned off the steering wheel and the shifter of the vehicle, but also noted that the "car [was] like forensically clean like somebody knew what they were doing did it." Although [Gerber] only admits having wiped down the interior of the vehicle, [Gerber's] father testified that he also observed [Gerber] wiping down the car from the outside. Additionally, wipe marks were found on the

passenger door window of the victim's vehicle and blood was present on the front license plate of the vehicle in a manner that was consistent with someone wiping the license plate. Finally, [Gerber] admitted "getting rid of the car" by dumping it along Schaffer's School House Road.

\*\*\*

[Gerber] testified that he never felt an impact of hitting a body that night, but he did admit that he could have driven through a "brick wall [because he] was so [expletive] scared that night."

\*\*\*

In his closing argument, [Gerber's] trial counsel made clear that the majority of these facts were not in dispute. However, the Defense argued that [Gerber] stabbed the victim in self-defense, believing that he was being sexually assaulted by the victim. [Gerber] claims that he began driving the victim's car, but never knew that he hit the victim because of his emotional state after being sexually assaulted and because of the foggy weather conditions that morning. Finally, [Gerber] claims that he dumped the vehicle on Schaffer's [School House] Road because his father told him to and that he never came forward to the police with his self-defense claim because he was ashamed of being sexually assaulted.

***Commonwealth v. Gerber***, 118 A.3d 440 (Pa. Super. 2015), non-precedential decision at \*\*1-2 (citations to record and footnote omitted; some formatting altered).[1]

_____

[1] Gerber originally entered a guilty plea to third-degree murder in 2008. A week before sentencing, Gerber filed a motion to withdraw his guilty plea, which, following a hearing, the trial court denied. That same day, the trial court sentenced Gerber to ten to twenty years of imprisonment. Gerber filed an appeal to this Court in which he challenged the denial of his motion to withdraw his guilty plea. On May 8, 2009, this court vacated Gerber's sentence and remanded for further proceedings. ***Commonwealth v. Gerber***, 981 A.2d 312 (Pa. Super. 2009) (non-precedential decision). On February 12,
*(Footnote Continued Next Page)*

On July 14, 2010, the jury found Gerber guilty of first-degree murder and the trial court sentenced him to life in prison. Gerber appealed to this Court. While this appeal was pending, Gerber filed a petition for remand so that the trial court could consider newly discovered DNA evidence. We granted the petition, vacated Gerber's judgment of sentence, and remanded for an evidentiary hearing. *See* Order, 2/27/12, at 1.

Once the matter returned to the trial court, Gerber filed a motion for discovery, which the trial court denied. After a hearing regarding the newly discovered DNA evidence, the trial court denied the motion. On March 18, 2013, the trial court resentenced Gerber to life in prison. The trial court denied Gerber's post-sentence motion. Gerber appealed. On January 7, 2015, we affirmed Gerber's judgment of sentence. Gerber did not seek further review.

On July 27, 2015, Gerber filed a counseled PCRA petition in which he raised multiple claims of trial counsel's ineffectiveness. After Gerber filed an amended petition, the PCRA court held three days of evidentiary hearings. By order entered September 27, 2016, the PCRA court denied relief and Gerber appealed to this Court. On November 27, 2017, this Court affirmed the order denying Gerber post-conviction relief. *Commonwealth v. Gerber*, 181 A.3d 435 (Pa. Super. 2017). On May 29, 2018, our Supreme Court denied Gerber's

---

2010, our Supreme Court denied the Commonwealth's petition for allowance of appeal. *Commonwealth v. Gerber*, 989 A.2d 915 (Pa. 2010). Following remand, Gerber withdrew his guilty plea and his jury trial commenced on July 7, 2010.

petition for allowance of appeal. ***Commonwealth v. Gerber***, 186 A.3d 938 (Pa. 2018).

On July 30, 2018, Gerber filed the PCRA petition at issue. The PCRA court appointed counsel. After two changes of counsel, current counsel entered his appearance on Gerber's behalf. After the court granted the parties additional time to address the timeliness of the petition, the PCRA court held an evidentiary hearing on January 21, 2020. At the hearing's conclusion, the PCRA court asked the parties to submit briefs. By opinion and order entered September 17, 2020, the PCRA court concluded that Gerber's second petition was untimely filed, and he failed to establish any time-bar exception. This appeal followed. Both Gerber and the PCRA court have complied with Pa.R.A.P. 1925.

Gerber raises the following issues on appeal:

1. Did the [PCRA] court err, abuse its discretion, and make findings unsupported by the record when it denied as untimely [Gerber's] claim that his right to due process was violated when the Commonwealth failed to provide an array of impeachment evidence pre-trial?

2. Did the [PCRA] court err when it held that there was an insufficient nexus between the event that triggered the limitations period for the filing of a second PCRA petition, and the due process claim pled in that petition?

3. Did the [PCRA] court err, abuse its discretion, make findings unsupported by the record, and fail to abide governing federal constitutional precedent and authority, when it required [Gerber] [to] demonstrate that he acted diligently in uncovering previously undisclosed impeachment evidence?

Gerber's Brief at 1-2 (excess capitalization omitted).

Central to all of Gerber's issues, is a challenge to the PCRA court's conclusion that his second PCRA petition was untimely filed, and that he failed to establish a time-bar exception. The timeliness of a post-conviction petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition is met.

The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231, 233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). Here, because Gerber's underlying claim arose prior to December 24, 2017, he was required to file his PCRA petition invoking one of these statutory exceptions within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2) (repealed).[2] In addition, exceptions to the PCRA's time bar must be pled in the petition and may not be raised for the first time on appeal. ***Commonwealth v. Burton***, 936 A.2d 521, 525 (Pa. Super. 2007); ***see also*** Pa.R.A.P. 302(a) (providing

---

[2] The current statutory subsection extends the period to one year.

that issues not raised before the lower court are waived and cannot be raised for the first time on appeal).

Finally, if a PCRA petition is untimely and the petitioner has not pled and proven an exception "neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007) (citation omitted).

Here, Gerber's judgment of sentence became final on February 6, 2015, thirty days after we affirmed his judgment of sentence, and the time for filing a petition for allowance of appeal to the Pennsylvania Supreme Court expired. *See* 42 Pa.C.S.A. § 9545(b)(3). Therefore, Gerber had until February 8, 2016, to file a timely petition.[3] Because Gerber filed his second PCRA petition in 2018, it is untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. *See Hernandez*, *supra*.

Gerber has failed to plead and prove an exception to the PCRA's time bar. In his petition, Gerber asserted he could establish the newly discovered fact and government interference exception. Both of these assertions were based on certain language used by our Supreme Court in *Commonwealth v. Chmiel*, 173 A.3d 617 (Pa. 2017). According to Gerber:

> [His] successive PCRA petition presented a claim alleging violations of due process of law as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), based on the

---

[3] February 6, 2016, fell on a Saturday. *See generally*, 1 Pa.C.S.A. § 1908.

> Commonwealth's failure to disclose a wide range of impeachment evidence related to [Mr.] Surma, and to Trooper DeAndrea's fiber testimony that was based on [Mr.] Surma's opinion. The leading edge of this due process claim - - whether PSP scientist George Surma was properly trained, supervised and complied with relevant standards in the field of microscopy at the time of his testing and trial testimony - - were directly called into question by the **Chmiel** opinion.

Gerber's Brief at 23. Before addressing these exceptions, we summarize our Supreme Court's decision n **Chmiel**.

In **Chmiel**, our Supreme Court concluded the PCRA court had jurisdiction to address Chmiel's otherwise untimely PCRA petition, because "[t]here were two newly-discovered facts as a result of the [2015 FBI press release and a corresponding newspaper article] upon which Chmiel's claim was predicated. **Chmiel**, 173 A.2d at 625. "First, the FBI publicly admitted [for the first time] that the testimony and statements provided by its analysts about microscopic hair comparison analysis were erroneous in the vast majority of cases." **Id.** The second newly-discovered fact was the FBI's acknowledgment that it "had trained many state and local analysts to provide the same scientifically flawed opinions in state criminal trials." **Id.** The Court then noted that George Surma, the Pennsylvania State Police forensic scientist who testified regarding microscopic hair analysis linking Chmiel to the crime, "may have exceeded the limits of science and overstated to the jury the significance of the microscopic hair analysis." **Id.** Our Supreme Court therefore concluded that Chmiel was entitled to a "merits determination of his underlying claim." **Id.** at 626 (footnote omitted).

- 8 -

Here, our review of the record supports Gerber's assertion that Mr. Surma testified at his trial. Thus, he asserts that our Supreme Court's discussion of Mr. Surma's testimony in *Chmiel* constituted a newly-discovered fact that renders his current PCRA timely. Moreover, Gerber contends that, once he read *Chmiel*, he proceeded to conduct his own "exhaustive, *pro se*" investigation into Mr. Surma's training and qualifications and discovered alleged impeaching evidence that the Commonwealth failed to disclose to his counsel pretrial, pursuant to *Brady*. Gerber's Brief 3. As noted above, Gerber contends that the Commonwealth's *Brady* violations in his case infringed upon his constitutional right to due process and constituted sufficient government interference to excuse the untimeliness of his second PCRA petition.

Gerber's claims fail. First, we discuss Gerber's newly-discovered fact claim based upon *Chmiel*, *supra*.

> The newly-discovered fact exception has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA Court has jurisdiction over the claim under this subsection.

*Commonwealth v. Brown*, 141 A.3d 491, 500 (Pa. Super. 2016) (citation omitted). When a petitioner asserts that a PCRA petition is timely based on the issuance of a judicial decision, only the third Section 9545 timeliness exception applies, as "[o]ur Courts have expressly rejected the notion that judicial decisions can be considered newly-discovered facts which would

invoke the protections afforded by section 9545(b)(1)(ii)." ***Commonwealth v. Cintora***, 69 A.3d 759, 763 (Pa. Super. 2013) (citing ***Commonwealth v. Watts***, 23 A.3d 980, 986 (Pa. 2011)).

Moreover, the PCRA court found no connection between the microscopic hair analysis discussed in ***Chmiel***, and the expert testimony regarding fibers found on the vehicle's tire in Gerber's case. As the court explained in detail:

> We find ***Chmiel*** does not constitute a newly-discovered fact as applied to [Gerber's] claims. There is simply no nexus between the microscopic hair analysis discredited in ***Chmiel*** and the forensic thread/fiber analysis presented in [Gerber's] case. Microscopic hair analysis and forensic thread/fiber analysis are two separate and distinct forensic disciplines. To extend ***Chmiel*** in this way would open all forensic disciplines to unwarranted collateral attack.
>
> Before mitochondrial DNA testing was used to analyze hair in criminal cases, prosecutors throughout the country routinely relied on microscopic hair comparison to link a criminal defendant to a crime. This flawed, albeit persuasive evidence resulted in an epic miscarriage of justice. Across the country, FBI microscopic hair analysts committed widespread, systematic error, grossly exaggerating the significance of their data under oath. The FBI Bulletin that triggered the newly-discovered fact exception in ***Chmiel*** recognized this epic miscarriage of justice and sought to remedy an egregious wrong.
>
> Here, a gray thread found on the back axle of the [victim's] vehicle was compared with a sample from the [victim's] pants. At trial, George Surma, offered and qualified as an expert in microscopy, submitted the following conclusion, "I was able to determine that the yarn from [the axle] was *similar* in diameter, color, construction, and composition to the gray yarn composing the pants from the [victim]. When asked if he was able "to actually [declare] a definitive match," [Mr.] Surma stated, "No . . . the sample was too small."

In ***Chmiel***, the FBI Bulletin made clear that microscopic hair analysis was being used as an analogue to mitochondrial DNA testing. Hair was being used to link a criminal defendant to a crime in a highly persuasive manner that resulted in an epic miscarriage of justice. Here, a piece of thread was examined and found to be similar to a swatch taken from the [victim's] pants. There is simply no persuasive analogy between the two, and ***Chmiel*** does not extend to discredit all forensic disciplines. In addition, ***Chmiel*** involved an admission by the authority behind the science that the science and related testimony were flawed. Here, there has been no analogous admission by the leading authority that forensic fiber/thread analysis is flawed or discredited in any way.

Finally, [Gerber] uses ***Chmiel*** as a pretext to launch his own investigation into George Surma, the expert who testified in both [] ***Chmiel*** and [Gerber's] case. However, ***Chmiel*** stands for the proposition that the science behind microscopic hair analysis, and testimony based on that science, is flawed. ***Chmiel*** does not call into question the credibility of countless experts whose testimony was informed by FBI training. Simply put, ***Chmiel*** did not discredit George Surma, and [Mr.] Surma did not present the discredited microscopic hair analysis in [Gerber's] case. Rather, [Mr.] Surma offered testimony on forensic thread/fiber analysis. Although [Gerber] suggests forensic thread/fiber analysis is unreliable, he offers nothing even approaching the high bar set in ***Chmiel***.

Where the leading authority behind a science offers an admission that the science and related testimony were unreliable, a newly-discovered fact exception is warranted. Here, no such fact has been proffered regarding forensic thread/fiber analysis. As such, [we] decline to extend ***Chmiel*** in a way that would open all forensic disciplines to collateral attack. We find this issue untimely and lack jurisdiction to consider it.

PCRA Court Opinion, 9/17/20, at 16-17 (emphasis in original; footnotes, some

quotation marks and citations omitted).

- 11 -

Gerber disagrees with the PCRA court's limited reading of *Chmiel*, and states that from his "perspective, the relevance of *Chmiel* to his case was not hair microscopy, but the criticism of [Mr.] Surma for not following industry guidelines for the practice of forensic microscopy." Gerber's Brief at 35-36. According to Gerber, what the PCRA court "ignores in its 'no nexus' finding, is that the examiner and his deviation from industry stand[ards] for the practice of forensic microscopy are the same in both instances**.**" Gerber's Brief at 36 (emphasis omitted). We disagree.

Gerber reads *Chmiel* too broadly. Initially, we note that the criticism of Mr. Surma's analysis and flaws in procedure appears in *Chmiel* not as language coming from our Supreme Court itself, but rather, as Gerber concedes, testimony from Samuel James Palenik, a forensic chemical microscopist. *Chmiel*, 173 A.3d at 627. The Court cited this testimony only when determining that Chmiel's challenge to Mr. Surma's testimony was not previously litigated in Chmiel's first PCRA petition. *Id.* Importantly, our Supreme Court did not adopt Mr. Palenik's criticism of Mr. Surma.

Moreover, our Supreme Court in *Chmiel* limited its analysis to microscopic hair analysis—the Court's discussion cannot be read to bar Mr. Surma specifically, or the science of microscopy in general. Thus, Gerber's claim that Mr. Surma's testimony in his case was "directly called into question by the *Chmiel* opinion" fails. Gerber's Brief at 23.

Finally, our Supreme Court, when discussing *Chmiel's* scope, has since stated that "the FBI 2015 press release strictly limited its scope to expert

testimony regarding hair comparison analysis and included no findings relating to fiber comparison analysis." *Commonwealth v. Tedford*, 228 A.3d 891, 913 (Pa. 2020). Thus, Gerber's basing his newly-discovered fact claim on *Chmiel* is inapt.

Second, although a *Brady* violation might fall within the governmental interference exception to the PCRA's time bar, the statute nevertheless requires a petitioner to plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the information on which he relies could not have been obtained earlier with the exercise of due diligence. *Commonwealth v. Williams*, 105 A.3d 1234 (Pa. Super. 2014). "No *Brady* violation occurs where the defendant knew or could have uncovered the relevant evidence with reasonable diligence." *Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013).

Here, while Gerber asserts multiple *Brady* violations regarding Mr. Surma's qualifications and legal training, he makes little to no attempt to demonstrate due diligence in his petition and appellate brief. Indeed, Gerber argues that applying a due diligence requirement to this time-bar exception violates due process and is inconsistent with various federal decisions. *See* Gerber's Brief at 27-29. We reject Gerber's claim as the time-bar exceptions to the PCRA have been held constitutional. *See generally*, *Commonwealth v. Peterkin*, 722 A.2d 638 (Pa. 1999); *see also Commonwealth v. Stokes*, 959 A.2d 306, 311-12 (Pa. 2008) (rejecting petitioner's assertion that an

alleged **Brady** violation may be raised in an otherwise untimely petition; the petitioner must establish due diligence).

In addition, Gerber's effort to demonstrate due diligence is misplaced because Gerber began his own investigation of Mr. Surma based on his misplaced reliance upon our Supreme Court's reference to Mr. Surma's testimony in the 2017 **Chmiel** decision, regarding the microscopic hair analysis he conducted in that case. Gerber does not explain why he could not discover these issues with Mr. Surma's qualifications within the previous ten years following his conviction.

In sum, our review of the record and pertinent case law supports the PCRA court's conclusion that Gerber's second PCRA petition is untimely, and Gerber cannot establish a time-bar exception. Thus, we affirm the order denying him post-conviction relief.[4]

Order affirmed.

_____

[4] Gerber takes issue with the PCRA court's considering the timeliness of each argument made as part of his due process challenge. **See** Gerber's Brief at 24. No matter how the PCRA court reached its conclusion, Gerber's second petition is untimely, and he has failed to establish an exception to the PCRA's time bar.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/10/2021*