J-S17011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KWAME MASSINA | : | |
| Appellant | : | No. 2341 EDA 2021 |

Appeal from the PCRA Order Entered October 7, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0001680-2008

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 18, 2022**

Kwame Massina appeals *pro se* from the order dismissing his second Post-Conviction Relief Act ("PCRA") petition as untimely.   After careful consideration, we affirm.

The trial court summarized the facts as follows:

At approximately 12:30 a.m. on January 31, 2008, while on routine patrol, Officer Jeffrey Rush of the Allentown Police Department witnessed what he believed to be a large[-]scale fight outside of Trinkle's Bar, located at 533 Turner Street, Allentown, Lehigh County, Pennsylvania.  He saw approximately two dozen patrons exiting the bar, some with pool cues or drinks in hand. Officer Rush exited his patrol vehicle and approached the scene, simultaneously calling for additional police backup.  Upon his approach individuals pointed to a man of medium-build, wearing dark clothing and a hoodie, running east on Turner Street.  Officer Rush witnessed the individual turn north onto Law Street, where the officer lost sight of the individual.  Patrons informed the officer that the man had a gun.

After being alerted that someone had been shot, Officer rush entered Trinkle's Bar.  In the area by the pool tables, he observed

a man on his back, wearing a white t-shirt and jeans, bleeding profusely form the head area. The man was unresponsive. A young female, later identified as Margarita Morales, was attempting to give the man CPR. Officer Rush asked individuals at the bar to remain so that they could provide statements as to what had occurred. Officer rush noted the faint smell of gunpowder in the room and a large neck wound on the man. Office Rush also noted gray matter on the floor of the bar. The victim was later identified as William "Big Will" Spearman.

Ms. Morales has been at Tinkle's Bar for approximately seven hours when she noticed [Appellant] due to his "pretty eyes," though she did not interact with him or know his identity. During the struggle, Ms. Morales saw [Appellant] with a gun and heard two gunshots and then saw people running form the area. After the two gunshots, Ms. Morales saw the victim slip onto the floor. She then saw [Appellant] shoot the victim two more times. After the shots rang out, Ms. Morales froze in place. [Appellant] ran past her, pulling his hoodie up. Once she saw [Appellant] leave, Ms. Morales went over to the victim to try to help him. She instructed the bartender to call 9-1-1 and attempted to give the victim CPR, to no avail.

Ms. Iris Rodriguez was also at the bar that evening. Close to 12:30 a.m., Ms. Rodriguez went to the ladies' room, located in the same room as the pool tables and the men's bathroom. Earlier in the evening, Ms. Rodriguez had seen [Appellant] and she was familiar with the victim from earlier occasions. While in the ladies' room, Ms. Rodriguez could hear people arguing and talking loudly. She exited the ladies' room and took a seat at a table close to where Ms. Morales was working and began to speak to Ms. Morales. She saw [Appellant] exit the bathroom, leave the immediate vicinity, and then return to the bathroom. The victim and [Appellant] exited the bathroom, seemingly trying to force each other out of the bathroom. Ms. Rodriguez, at that point, did not see a weapon. The victim and [Appellant] continued to physically push each other. Ms. Rodriguez then noticed a gun in [Appellant's] hand and heard shots ring out. The victim fell to the ground. Ms. Rodriguez tried to leave the bar but wasn't able to. . . .

Mr. Edward Reid, the nighttime bartender at Trinkle's Bar, also testified. Mr. Reid testified that the victim was at the bar that evening, wearing a large white coat and a big silver chain around

his neck. Mr. Reid was standing at one end of the bar when he heard a loud "bang" emanating from the other end of the bar. He responded to that end of the bar, taking note that other patrons began to leave the bar quickly, including a black, heavy-set male with a large handgun in his hand. Mr. Reid also noted that the man with the gun was wearing a hood and that he had seen the man earlier in the evening and that he may have been wearing a baseball hat. When he went to the end of the bar, Mr. Reid noticed that the victim was lying on the floor, bleeding. Mr. Reid called 9-1-1 and watched as Ms. Morales attempted to help the victim.

While on scene, police photographed and collected various items of evidence. Evidence included a black New York Yankees baseball hat, found on top of a pool table in close proximity to the victim. After review of surveillance video from the bar, officers noted that this hat was worn by the suspect. The hat was sent to Pennsylvania State Police Crime Laboratory for DNA analysis. Analysis was performed and DNA found on the headband of the baseball cap was compared to [Appellant's] known DNA profile. While analysis did not reveal that [Appellant's] DNA was a match to the DNA found on the headband of the hat, it was determined that the DNA found on the headband would be consistent with a mixture of multiple individuals. Further, analysis determined that 1 in 2,700 unrelated Caucasians, 1 in 3,900 unrelated African-Americans, and 1 in 3,200 unrelated Hispanics would be expected to be included in the DNA mixture profile discovered on the hat headband.

Video surveillance of the bar area was obtained. Photographs made form the video show (A) the victim walking into the men's bathroom, wearing a large medallion; (B) a struggle between the victim and another individual; and (C) the victim on the floor with the other individual standing above him, holding a gun in the right hand. The individual's face was partially covered by a hoodie, with only the top part of the nose and eye area displayed. A Yankees baseball hat was observed on the shooter's head.

An autopsy of the victim was performed by Dr. Samuel Land. The cause of death was multiple gunshot wounds and the manner of death was ruled a homicide.

On March 17, 2008, Mr. Reid was asked to view a photo array. At that time, Mr. Reid identified [Appellant] as the shooter, but made note that he was only 60% sure of his identification.

On April 1, 2008, Ms. Rodriguez was shown a photo array containing eight individual pictures on one piece of paper and was able to identify [Appellant] as the shooter. On April 2, 2008, Ms. Morales was shown the same photo array and was able to identify [Appellant] as the shooter.

Trial Court Opinion, 2/2/10, at 5-9.

Appellant was arrested and charged with homicide and related firearms offenses. Appellant's pretrial motions to suppress various pieces of evidence, including the photo arrays as unduly suggestive, were denied and, on September 1, 2009, a jury trial commenced on the homicide charge.[1] At trial, Appellant's cell mate testified that Appellant had confessed to the homicide and revealed various details which had not been released to the press. Trial counsel attempted to attack the reliability of the eyewitness identifications on cross-examination and in his closing argument. On September 4, 2009, the jury found Appellant guilty of first-degree murder. Appellant was sentenced to life imprisonment without the possibility of parole and his post-sentence motion was denied. A direct appeal followed, in which this Court affirmed Appellant's judgment of sentence, and on March 16, 2011, our Supreme Court denied allowance of appeal. *Commonwealth v. Massina*, 15 A.3d 544

---

[1] The Commonwealth withdrew all other charges prior to trial.

- 4 -

(Pa.Super. 2010) (unpublished memorandum), *appeal denied*, 20 A.3d 485 (Pa. 2011).

In 2012, Appellant filed a timely *pro se* PCRA petition. Appointed counsel filed a motion to withdraw and no-merit brief pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).[2] The PCRA court dismissed the PCRA petition without a hearing and granted counsel's motion to withdraw. Appellant timely appealed. We affirmed the denial of Appellant's PCRA petition, and our Supreme Court denied allowance of appeal on June 21, 2016. **See Commonwealth v. Massina**, 141 A.3d 603 (Pa.Super. 2016) (unpublished memorandum), *appeal denied*, 61 MM 2016 (Pa. 2016).

On September 9, 2021, Appellant filed his second *pro se* PCRA petition, which is the subject of this appeal. In his petition, Appellant indicated that he had "newly discovered facts received by mail" discussing alleged flaws in the eyewitness evidence adduced at his trial. **See** PCRA Petition, 9/9/21, at 3. Specifically, Appellant identified the newly discovered facts as the "eyewitness identification task force. Greenspan Loftus Publ. (5-07-02). Temple Law

---

[2] Initially, the PCRA court denied the petition based on a **Turner**/**Finley** letter. However, during the resulting *pro se* appeal, the PCRA court reconsidered the letter, found it insufficient, and requested that we remand for further proceedings. We vacated the PCRA order and remanded for further proceedings. **See Commonwealth v. Massina**, 83 A.3d 1065 (Pa.Super. 2013) (unpublished memorandum). On remand, the PCRA court appointed new PCRA counsel, who also filed a motion to withdraw and **Turner/Finley** letter.

Review Vol. 91 (1) (Fall 2019) and Commonwealth v. George Cortez ("*Cortez*")." *Id*.[3]  Appellant also noted that he received the new facts in the mail from an "outside source" on July 16, 2021.  *Id*.

The PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, finding that Appellant had failed to meet the timeliness requirements of the PCRA.  *See* Order, 9/16/21.  Appellant filed a response, arguing that his petition was timely because the law on expert eyewitness testimony had changed, and he was unaware of that change until he received the *Cortez* decision on July 16, 2021.  *See* Objection to Notice of Intent to Dismiss, 10/5/21, at unnumbered 1.  Appellant averred that he could not have discovered *Cortez* earlier because it was not published in the State Correctional Institutes library.  *Id*. at unnumbered 2.  Accordingly, since Appellant filed his petition within one year of the receipt of this mail, Appellant had exercised due diligence.  *Id*.

_____

[3] Appellant attached exhibits to his petition which included the title page, table of contents, and introduction of the Philadelphia Event Review Team report analyzing "Commonwealth v. George Cortez" from April 2019 and the title page of a Temple Law Review Article from the Fall of 2019, discussing a study conducted on eyewitness confidence malleability.  Appellant did not include a case citation or the text for "Commonwealth v. George Cortez."  Nevertheless, the parties agree that *Cortez* was a 2012 homicide case in the Court of Common Pleas of Philadelphia where the defendant was convicted and later granted a new trial after a successful PCRA petition.  *See* PCRA Opinion, 12/10/21, at 6; *see also* Commonwealth's brief at 13.  During the preparation for the retrial, the defendant's brother confessed to the homicide, causing the Commonwealth to realize that the surviving victim had misidentified the shooter.  *Id*.  The defendant was later exonerated.  *Id*.

The PCRA court disagreed and dismissed the petition. In the order, the court explained that a non-precedential, "2012 homicide case where the defendant was convicted and later exonerated following a PCRA petition" did not qualify as a newly discovered fact for purposes of the PCRA time bar. Order, 10/7/21, at 1 n.1. The PCRA court also found that Appellant had failed to show the necessary due diligence to overcome the PCRA time bar. *Id*. This timely, *pro se* appeal followed.

Appellant presents two issues in his brief, which we reproduce as follows:

> A.    PCRA court erred in failing to appoint an identification expert to explain to the court and jurors of certain scientifically proven facts relating to eyewitness identification[.]
>
> B.    PCRA court erred in holding publication:  a) eyewitness identification task force (2020) and b) Temple L. Rev. (Fall [2010]) were newspapers or judicial determinations, in not applying sec. 9545(b)(1)(ii) ("facts unknown to petitioner"[)].

Appellant's brief at 4.

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error." ***Commonwealth v. Whitehawk***, 146 A.3d 266, 269 (Pa.Super. 2016).

In order for a petition to be timely under the PCRA, it must be filed within one year of the date that the petitioner's judgment of sentence became final. ***See*** 42 Pa.C.S. § 9545(b)(1). Appellant's petition, filed nearly ten years

after his judgment of sentence became final, is patently untimely. Thus, unless Appellant pled and proved one of the three exceptions to the PCRA time-bar outlined in 42 Pa.C.S. § 9545(b)(1)(i-iii),[4] we cannot address the claims he asserts therein. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) ("[N]either this Court nor the trial court has jurisdiction over [an untimely] petition").

Appellant alleges that the instant PCRA petition falls under the timeliness exception set forth at § 9545(b)(1)(ii), relating to newly-discovered facts. *See* Appellant's brief at 9. "A petitioner satisfies the newly-discovered facts exception when the petitioner pleads and proves that (1) the facts upon which the claim [is] predicated were unknown and (2) could not have been ascertained by the exercise of due diligence*.*" *Commonwealth v. Hart*, 199

---

[4] These exceptions are:

> (i) The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1).

A.3d 475, 481 (Pa.Super. 2018) (emphasis omitted). Due diligence demands "reasonable efforts by a petitioner based on the particular circumstances, to uncover facts that may support a claim for collateral relief but does not require perfect vigilance [or] punctilious care." *Id*.

Although facially untimely, Appellant pled the newly-discovered facts exception in an attempt to overcome the PCRA time bar. *See* PCRA Petition, 9/9/21, at 3; *see also* Objection to Notice of Intent to Dismiss under Pa.R.Crim.P. 907, 10/5/21, at unnumbered 1. Accordingly, first, we must pinpoint the new fact Appellant invokes. In his PCRA petition, Appellant alleged that *Cortez* and a report analyzing the case were his newly discovered facts. *See* PCRA Petition, 9/9/21, at 3. Appellant also pointed to a law review article which discussed eyewitness misidentification as further proof that the eyewitness identifications in his case were unreliable and that he is entitled to an eyewitness identification expert. *Id*. Appellant's claim fails.

The PCRA court concluded that since judicial decisions do not amount to new facts, Appellant failed to meet the PCRA time bar. *See* PCRA Opinion, 12/21/21, at 6. We agree. "As [our Supreme Court has] related quite a few times, 'subsequent decisional law does not amount to a new 'fact' under [S]ection 9545(b)(1)(ii) of the PCRA.'" *Commonwealth v. Reid*, 235 A.3d 1124, 1147 (Pa. 2020) (quoting *Commonwealth v. Watts*, 23 A.3d 980, 987 (Pa. 2011)). Therefore, to the extent Appellant claims *Cortez*, a judicial

decision, constitutes a new fact, his claim does not satisfy the newly discovered facts exception to PCRA timeliness.

In his brief, Appellant asserted that the factual predicate for his claim was not the **Cortez** decision itself but, instead, the scientific principles questioning the reliability of eyewitness identifications. **See** Appellant's brief at 14. Appellant based his assertion on **Commonwealth v. Chmiel**, 173 A.3d 617 (Pa. 2017). However, Appellant reads **Chmiel** too broadly. Instead, this case should be governed by our Supreme Court's holding in **Commonwealth v. Edmiston**, 65 A.3d 339 (Pa. 2013) (overruled in part on separate grounds).

In **Chmiel**, our Supreme Court concluded the appellant met the newly-discovered facts exception based upon an FBI press release and corresponding newspaper article in which the FBI publicly admitted, for the first time, that its examiners gave flawed and scientifically unsupportable testimony and spread this flawed methodology to state and local analysts. **Id**. at 625. The Court reasoned that while the scientific principles themselves did not constitute new facts, FBI's public admission discrediting the science and related testimony did amount to new facts. Since the appellant could not have discovered this concession earlier with due diligence, his claim satisfied the newly discovered fact exception and warranted a remand for merits review of the substantive claim.

In contrast, in **Edmiston**, the appellant attempted to rely on a new report about scientific principles questioning the reliability of hair comparison

analysis as his previously undiscoverable fact. *Id*. at 352. However, our Supreme Court explained that the scientific principles contained within the report were not new, but had existed in various sources prior to the publication of the report. *Id*. Since the appellant was unable to prove that he had discovered any new facts, but rather a new source for old facts, the PCRA court lacked jurisdiction to reach the merits of his claims.

The questions that Appellant raises in the instant case about the reliability of photo arrays and other out-of-court identification procedures similarly are not new. Indeed, in 2014, while changing the law on the admissibility of eyewitness expert testimony in Pennsylvania, our Supreme Court examined and cited to "many scholarly articles detail[ing] the considerable amount of behavior research in the area of eyewitness identification" that predated that opinion and "convincingly demonstrate[d] the fallibility of eyewitness identification testimony." ***Commonwealth v. Walker***, 92 A.3d 766, 781-82 (Pa. 2014). Thus, the scientific principles discussed in the articles upon which Appellant relies are not new, but instead were publicly available in 2014 when ***Walker*** was published.[5] However, Appellant did not raise this claim alleging that he was entitled to expert

_____

[5] In 2014, Appellant was litigating his first, counseled PCRA petition, which concluded in 2016. Thus, the public record exception would not apply here. ***See Commonwealth v. Burton***, 158 A.3d 618, 719 (Pa. 2017) (holding that "the presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection (b)(1)(ii) does not apply to *pro se* prisoner petitioners").

- 11 -

eyewitness testimony until 2021. Despite attempting to exclude eyewitness testimony pretrial, our review of the record uncovered no instances where Appellant requested an expert on eyewitness testimony. Appellant also proffered no allegations of the efforts he made to discover the facts pertinent to his claim in the intervening years. For all the record shows, Appellant waited until these articles fell into his lap and then attempted to capitalize on Walker's success, seven years after the fact. Such is not a proper invocation of the newly-discovered facts exception. **See Watts**, **supra** at 988 (concurring opinion, Justice Baer) ("Section 9545(b)(1)(ii) is not designed to reward this type of piggyback litigation; instead, it is designed to provide a limited timeliness exception for after-discovered facts in one's own case.").

Since Appellant has provided no new facts or explanation for why he could not have ascertained earlier with due diligence the facts upon which he bases his challenge to the absence of expert eyewitness identification testimony, we agree with the PCRA court that Appellant has not carried his burden under § 9545(b)(2). **See** PCRA Court Opinion, 12/10/21, at 6. Accordingly, we find that the PCRA court did not err when it denied his petition as untimely.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2022