J-A22025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR DELOATCH | : | |
| | : | |
| Appellant | : | No. 457 MDA 2021 |

Appeal from the PCRA Order Entered March 26, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000532-2012

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JULY 25, 2022**

Appellant, Victor Deloatch, appeals from the March 26, 2021 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545.  We affirm.

A panel of this Court previously summarized the factual and procedural history as follows:

> On August 23, 2011, [Appellant] acted as the getaway driver for an accomplice, Nikia McDonald ("McDonald"), who attempted to pass a false prescription for oxycodone. Officer John Hanuska [(]"Officer Hanuska"[)] of the West Manchester Township Police Department ultimately filed criminal charges against [Appellant].  A jury trial was held from June 13[, 2012] to June 15, 2012.  The jury found [Appellant] guilty of Count 1: criminal conspiracy to commit forgery[ - unauthorized act in writing] and Count 2: criminal attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery,

deception[,] or subterfuge.[1]  On September 9, 2013, the trial court sentenced [Appellant] on Count 2 to [five] to [ten] years in [a] state correctional institution[] and on Count 1 to [five] years of probation.  The sentence [imposed] on Count 1 was to run consecutively to the sentence [imposed] on Count 2.

Trial Court Opinion, 3/10/15, at 1–2[.]  [Appellant] filed post-sentence motions, which, after a hearing, the trial court denied.  [Appellant] did not immediately file a direct appeal of his judgment of sentence.  Ultimately, on December 23, 2014, the trial court granted [Appellant] permission to file a direct appeal[] *nunc pro tunc*.  On January 2, 2015, [Appellant] filed his *nunc pro tunc* notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of [errors] complained of on appeal.

***Commonwealth v. Deloatch***, 2015 WL 9596604, at *1 (Pa. Super. Dec. 30, 2015) (unpublished memorandum) (original brackets and extraneous capitalization omitted).

On December 30, 2015, this Court affirmed Appellant's convictions but concluded that the imposition of separate sentences for criminal conspiracy and criminal attempt violated 18 Pa.C.S.A. § 906, which bars multiple convictions of inchoate crimes.[2]  ***Deloatch***, 2015 WL 9596604, at *6.

---

[1]  18 Pa.C.S.A. §§ 903(a)(1), 4101(a)(2), 901(a), and 35 P.S. § 780-113(a)(12), respectively.

[2] Section 906 of the Crimes Code states that, "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation[,] or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime."  18 Pa.C.S.A. § 906.

Thereupon, this Court vacated Appellant's illegal sentence and remanded the case for resentencing.[3] **Id.** at *7.

On February 12, 2016, the trial court resentenced Appellant on Count 2 to five to ten years' incarceration in a state correctional institution and awarded credit for time already served. N.T., 2/12/16, at 4. For purposes of sentencing, the trial court found that Count 1 merged with Count 2 and, thus, imposed no further sentence on Count 1. **Id.** at 3-4. Appellant did not appeal from his new judgment of sentence.[4] Therefore, as discussed more fully *infra*, Appellant's judgment of sentence became final on March 24, 2016.

On February 7, 2017, Appellant filed *pro se* a PCRA petition, his first.[5] The PCRA court appointed Jonelle Eshbach, Esquire ("Attorney Eshbach") as

---

[3] Appellant filed a request seeking reargument of this Court's December 30, 2015 decision, which this Court subsequently dismissed as untimely. *Per Curiam Order*, 1/28/16 (69 MDA 2015). Thereafter, Appellant filed a petition for *writ* of *mandamus* with our Supreme Court, which was administratively closed on April 27, 2016.

[4] After resentencing, Appellant filed another petition for *writ* of *mandamus* with our Supreme Court, which was subsequently denied on December 16, 2016.

[5] Appellant's *pro se* PCRA petition was docketed by the PCRA court on February 10, 2017. The envelope used to mail the petition, however, was postmarked as having been mailed on February 7, 2017. Therefore, we deem Appellant's *pro se* PCRA petition has having been filed on February 7, 2017, pursuant to the prisoner mailbox rule. **Commonwealth v. Chambers**, 35 A.3d 34, 39 (Pa. Super. 2011) (explaining that, "a *pro se* prisoner's appeal shall be deemed to be filed on the date that he[, or she,] delivers the appeal to prison authorities [or] places his[, or her,] notice of appeal in the institutional mailbox"), *appeal denied*, 46 A.3d 715 (Pa. 2012).

PCRA counsel for Appellant on September 25, 2017. Attorney Eshbach filed

an amended PCRA petition on November 16, 2017, raising claims of ineffective

assistance of both trial and direct appeal counsel, as well as a claim that

Appellant's original sentence was illegal under Pa.R.Crim.P. 704.[6, 7] Numerous

hearings were scheduled and continued on this petition. After conducting an

evidentiary hearing, the PCRA court denied Appellant's petition on January 30,

2019.[8] Appellant did not appeal the January 30, 2019 order denying his

petition.

_____

[6] At trial, Appellant was represented by Assistant Public Defender George H. Margetas, Esquire ("Attorney Margetas"). Assistant Public Defender Joshua Neiderhiser, Esquire represented Appellant during the post-sentence motion phase of the case, and William H. Graff, Jr., Esquire represented Appellant on direct appeal.

[7] Pennsylvania Rule of Criminal Procedure 704 provides, in pertinent part, that a "sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*." Pa.R.Crim.P. 704(A)(1).

[8] At the conclusion of the January 30, 2019 evidentiary hearing, the PCRA court dictated the following order from the bench:

> The [PCRA] court finds that there is no **Brady** violation. The [PCRA] court's finding is that [Appellant,] based on this record[,] brought this on himself by getting his parole violation. [The PCRA] court granted him the benefit by running his sentence up here in Pennsylvania concurrent[ly] with his problems down in Maryland. But[, he is] not entitled to any additional relief.

> Attorney Margetas testified credibly as to why he did certain things during the course of the trial. The [PCRA] court finds that none of those decisions were malpractice or ineffective assistance of counsel.

In September 2020, Appellant filed *pro se* the instant petition.[9] On December 2, 2020, the PCRA court notified Appellant pursuant to Pennsylvania Rule of Criminal Procedure 907 of its intent to dismiss Appellant's petition without conducting an evidentiary hearing and, consistent therewith, informed Appellant he had 20 days in which to file a response.[10] Although copies of the ensuing correspondence are not included in the certified record, a review of the PCRA court docket demonstrates that Appellant filed "case correspondence" with the PCRA court on December 3, 2020, and December 21, 2020. The docket also reveals that the PCRA court served notice of the

_____

PCRA Court Order, 1/30/19 (extraneous capitalization omitted). On January 30, 2019, the PCRA court also entered a separate order stating that Appellant's petition was denied.

[9] The PCRA court accepted Appellant's *pro se* petition for filing on October 2, 2020. The postmark on the envelope used to mail the petition, however, indicates that the petition was deposited with prison authorities in September, but the exact day and year were not captured in the electronic scan of the envelope that is part of the certified record. Therefore, the exact date of mailing cannot be determined from the certified record because a portion of the postmark was omitted in scanning the envelope. We note that the envelope was mailed in September 2020, and was not mailed in September of an earlier year, because Appellant included, as part of his *pro se* PCRA petition, copies of electronic mail dated December 2019. Therefore, pursuant to the prisoner mailbox rule, we deem Appellant's *pro se* petition filed in September 2020.

[10] The PCRA court originally provided Appellant notice of its intent to dismiss pursuant to Rule 907 on November 9, 2020, but that notice incorrectly stated that Appellant's judgment of sentence became final on March 31, 2020. The PCRA court then provided Appellant with a second Rule 907 notice on December 2, 2020. The notice generated on December 2, 2020, also stated, incorrectly, that Appellant's judgment of sentence became final on December 30, 2016.

"case correspondence" on Tessa Marie Myers, Esquire ("Attorney Myers") on January 8, 2021, *via* first-class mail. On January 11, 2021, the PCRA court appointed Attorney Myers as counsel for Appellant "in order to determine the timeliness of" Appellant's PCRA petition.[11] On March 26, 2021, the PCRA court denied Appellant's petition. This appeal followed.[12]

Appellant raises the following issues for our review:

1. Whether the [PCRA] court erred in finding Appellant's PCRA petition was untimely when the [PCRA] court determined that Appellant did not meet the requirements for the time[-]bar exception [as set forth at] 42 Pa.C.S.[A.] § 9545(B)(1)(ii)?

2. Whether the [PCRA] court erred in denying Appellant's PCRA petition when the [PCRA] court determined that [PCRA] counsel[ - Attorney Eshbach – was not ineffective in failing to file] an appeal after Appellant's first PCRA petition was denied?

Appellant's Brief at 4 (extraneous capitalization omitted).

Preliminarily, we must address the timeliness of Appellant's PCRA petition since this implicates this Court's jurisdiction. ***In re Payne***, 129 A.3d 546, 555 n.12 (Pa. Super. 2015) (*en banc*), *appeal denied*, 145 A.3d 167 (Pa.

---

[11] In a January 12, 2021 order, the PCRA court again stated it appointed Attorney Myers to represent Appellant but revised the list of parties entitled to receive notice from the clerk of courts regarding Attorney Myers' appointment as counsel for Appellant.

[12] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. In its Rule 1925(a) opinion, the PCRA court stated it relied on the reasons set forth in its March 26, 2021 order and opinion denying Appellant's PCRA petition. PCRA Court Opinion, 5/27/2021.

2016). It is well-established that the timeliness of a PCRA petition is jurisdictional, and, if a PCRA petition is untimely, courts lack jurisdiction over the claims and cannot grant relief. *Commonwealth v. Bradley*, 261 A.3d 381, 390 (Pa. 2021); *see also Commonwealth v. Callahan*, 101 A.3d 118, 121 (Pa. Super. 2014) (holding, courts do not have jurisdiction over an untimely PCRA petition). To be timely filed, a PCRA petition, including second and subsequent petitions, must be filed within one year of the date a petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The PCRA's jurisdictional time restriction is constitutionally sound. *Commonwealth v. Cruz*, 852 A.2d 287, 292 (Pa. 2004).

Our standard and scope of review of a PCRA court's dismissal of a PCRA petition is well-settled. Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those

findings merely because the record could support a contrary holding." ***Commonwealth v. Hickman***, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Here, the trial court resentenced Appellant on February 12, 2016. Appellant did not appeal his newly-imposed judgment of sentence. As such, Appellant's judgment of sentence became final on March 14, 2016.[13]  42 Pa.C.S.A. § 9545(b)(3); ***see also*** Pa.R.A.P. 903(a) (requiring a notice of appeal to be filed within 30 days after entry of the order from which appeal is taken). Therefore, Appellant's instant PCRA petition filed in September 2020, 4½ years after his newly-imposed judgment of sentence became final, is patently untimely.

If a PCRA petition is untimely filed, the jurisdictional time-bar can only be overcome if a petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). ***Commonwealth v. Spotz***, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government

---

[13] We note that the 30th day upon which to file a notice of direct appeal in the case *sub judice* fell on Sunday, March 13, 2016. Therefore, Appellant's judgment of sentence became final on Monday, March 14, 2016. **See** 1 Pa.C.S.A. § 1908 (stating that, whenever the last day of any period of time referred to in a statute "shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation").

officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking an exception to the jurisdictional time-bar must be filed within one year of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2) (effective Dec. 24, 2018). If a petitioner fails to invoke a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition and provide relief. ***Spotz***, 171 A.3d at 676.

Here, Appellant invokes the newly-discovered facts exception to the jurisdictional time-bar. Appellant's Brief at 8-14. He predicates his claim on learning, in December 2019, that his first PCRA petition was denied on January 30, 2019, and that no appeal was lodged despite his request.[14] ***Id.*** Appellant contends Attorney Eshbach abandoned him when she "disregarded the [f]inal [o]rder[, denying his PCRA petition, that was] handed to her at the conclusion of the January 30, 2019 [evidentiary] hearing, and [when she] failed to communicate the [disposition of Appellant's petition after] she was again served with [a copy of the January 30, 2019 order] in March [] 2019." ***Id.*** at 11-12. Appellant argues that these newly-discovered facts, namely that his

---

[14] We note that PCRA counsel for Appellant incorrectly refers to the newly-discovered facts exception to the jurisdictional time-bar as the "after-discovered evidence exception[.]" Appellant's Brief at 8. The newly-discovered facts exception to the jurisdictional time-bar is distinct from an after-discovered evidence claim, which is a substantive basis for relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(iv). ***Commonwealth v. Small***, 238 A.3d 1267, 1268 (Pa. 2000); ***see also*** 42 Pa.C.S.A. § 9545(b)(1)(ii).

PCRA petition was denied and that no appeal was taken, were unknown to him until December 5, 2019, and that he was only able to learn of these facts after his girlfriend contacted Attorney Eshbach on his behalf to inquire about the status of his appeal. *Id.* at 12.

It is well-established that, to invoke the newly-discovered facts exception, a petitioner must plead and prove the facts were "unknown" to him, or her, and that he, or she, could not uncover them with the exercise of "due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1274 (Pa. 2007). "Due diligence does not require perfect vigilance and punctilious care, but merely a showing the party [] put forth reasonable effort to obtain the information upon which a claim is based." *Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016) (citation and original quotation marks omitted). "[T]he newly[-]discovered fact exception does not require any merits analysis of the underlying claim, and application of the time-bar exception therefore does not necessitate proof of the elements of a claim of after-discovered evidence."[15] *Small*, 238 A.3d at 1286.

---

[15] To obtain a new trial based on after-discovered evidence, a petitioner must satisfy a four-part test requiring:

> the petitioner to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

Recently, in **Bradley**, **supra**, our Supreme Court held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of [original] PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Bradley**, 261 A.3d at 401 (footnote omitted); **see also Commonwealth v. Parrish**, ___ A.3d ___, 2022 WL 1244413, at *10 (Pa. Apr. 28, 2022) (slip opinion). The **Bradley** Court stated that when the ineffective assistance of original PCRA counsel claim is raised on collateral appeal, such a claim is deemed "to spring from the original petition itself" and consideration of the claim by an appellate court "does not amount to impermissibly allowing a 'second or subsequent' serial petition" in violation of the PCRA's one-year jurisdictional time-bar.[16] **Bradley**, 261 A.3d at 404 (reasoning that, "[a] petitioner cannot challenge [original] PCRA counsel's effectiveness before the PCRA court because the

_____

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018), *citing* **Commonwealth v. Pagan**, 950 A.2d 270 (Pa. 2008), *cert. denied*, 555 U.S. 1198 (2009).

[16] **Bradley**'s pronouncement that such an ineffectiveness claim should be viewed as "springing" from the original petition and that consideration of the claim on collateral appeal would not violate the jurisdictional time-bar suggests or infers the following: (1) the original petition was timely filed, and (2) the ineffectiveness claim forwarded for the first time on collateral appeal is raised more than one year after the petitioner's judgment of sentence became final. **See Parrish**, 2022 WL 1244413, at *7 (stating, the **Bradley** Court recognized that traditional issue preservation principles [(**see** Pa.R.A.P. 302(a))] do not apply where they would make it impossible for a petitioner to **timely** raise a claim of initial PCRA counsel's ineffectiveness" (emphasis added)).

alleged ineffectiveness is playing out as that proceeding occurs, and ineffectiveness cannot be identified until the proceeding [] conclude[s]"); *see also Commonwealth v. Shaw*, 247 A.3d 1008, 1015 (Pa. 2021) (reiterating the "general rule prohibiting attorneys from challenging their own stewardship").

While the new rule of law set forth in *Bradley*, *supra*, allows a PCRA petitioner to raise claims of ineffectiveness at the first opportunity to do so, even within the context of collateral appeal, such circumstances are not before us in the case *sub judice*, where Appellant raised PCRA counsel's ineffectiveness in a subsequent, and untimely, PCRA petition. Thus, we turn to our Supreme Court's jurisprudence, as set forth in *Bennett*, *supra*, and *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780 (Pa. 2000), and their progeny, which address claims involving PCRA counsel's ineffectiveness **raised in second or subsequent PCRA petitions**. *Bradley*, 261 A.3d at 404 n.18 (stating, "[w]e decline to adopt [an] approach . . . that would deem a petitioner's 'discovery' of initial PCRA counsel's ineffective assistance to constitute a 'new fact' that was unknown to petitioner, allowing such petitioner to overcome, in a successive petition, the PCRA's time[-]bar provision under the [newly-discovered facts] exception" (citing 42 Pa.C.S.A. § 9545(b)(1)(ii)); *see also Parrish*, 2022 WL 1244413, at *10-*11.

In *Gamboa-Taylor*, our Supreme Court held that "subsequent [PCRA] counsel's review of previous [PCRA] counsel's representation and a conclusion that previous [PCRA] counsel was ineffective is not a newly[-]discovered 'fact'

- 12 -

entitling [a petitioner] to the benefit of the [newly-discovered facts] exception" pursuant to 42 Pa.C.S.A. § 9545(b)(1)(ii). *Gamboa-Taylor*, 753 A.2d at 785. In *Bennett*, *supra*, our Supreme Court qualified its holding in *Gamboa-Taylor* by stating that an allegation of ineffective assistance of previous PCRA counsel may constitute a "fact" for purposes of the newly-discovered facts exception **if** previous PCRA counsel's actions or inactions amounted to abandonment or a complete denial of counsel. *Bennett*, 930 A.2d at 1273-1274 (stating that, where previous PCRA counsel's actions or inactions amount to abandonment or a complete denial of counsel, a petitioner's allegations of ineffectiveness would fall within the ambit of the newly-discovered facts exception).

In this limited circumstance, where previous PCRA counsel's ineffective assistance constituted a "fact" for purposes of the newly-discovered fact exception, the *Bennett* Court explained, the petitioner was still required to "prove that the facts were 'unknown' to him and that he could not uncover them with the exercise of 'due diligence'." *Id.* at 1274; *see also Commonwealth v. Watts*, 23 A.3d 980, 984 (Pa. 2011) (stating, "when a petitioner claims he was abandoned on appeal by former counsel, he may successfully invoke [the newly-discovered facts exception pursuant to Section] 9545(b)(1)(ii) if he can establish that the facts upon which his claim is predicated were unknown to him and could not have been discovered through the exercise of due diligence").

Here, Appellant raised his claim of ineffective assistance of original PCRA counsel, Attorney Eshbach, in a separate, second PCRA petition that, as discussed *supra*, is patently untimely. As such, our Supreme Court's recent pronouncement in ***Bradley***, ***supra***, is of no avail, and Appellant's allegations are governed by the principles set forth in ***Bennett***, ***supra***, and its progeny. ***Bradley***, 261 A.3d at 406 (explaining that, the decision therein "does not create an exception to the PCRA's jurisdictional time-bar, such that a petitioner represented by the same counsel in the PCRA court and on PCRA appeal could file an untimely successive PCRA petition challenging initial PCRA counsel's ineffectiveness because it was his 'first opportunity to do so.'") (Dougherty, J. concurrence). Consequently, we must examine whether Appellant's assertions surrounding Attorney Eshbach's alleged ineffectiveness, including, *inter alia*, her failure to communicate, on January 30, 2019, the denial of Appellant's first PCRA petition and her ensuing failure to lodge a timely appeal, constitute "facts" for purposes of the newly-discovered facts exception, within the contemplation of ***Bennett***. ***Bennett***, 930 A.2d at 1274 (stating, "the performance of counsel must comply with some minimum norms, which include not abandoning a client for purposes of appeal"); ***see also Bradley***, 261 A.3d at 402 (stating, "a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness" (citation and original quotation marks omitted)).

Here, Appellant asserts that Attorney Eshbach abandoned him when she failed to inform him that his PCRA petition had been denied on January 30,

2019, and subsequently failed to file an appeal, as requested by Appellant. Appellant's Brief at 11. Appellant contends that he was unaware at the conclusion of the January 30, 2019 evidentiary hearing that his petition had been denied, and Attorney Eshbach did not inform him that his petition had been denied, either at the conclusion of the evidentiary hearing or after she again received notice of the order denying the petition in March 2019. *Id.* at 10. Appellant asserts that, even after receiving notice in March 2019, Attorney Eshbach "made no attempt to locate Appellant and inform him of the [PCRA] court's dismissal" of his petition, thus, denying him his ability to appeal such order. *Id.*

In *Bennett*, *supra*, our Supreme Court stated that orders, such as orders denying PCRA petitions, are not sent directly to a petitioner when the petitioner is represented by counsel. "Rather, counsel is sent the notice on the assumption that counsel will inform his[, or her,] client of the [PCRA] court's action." *Bennett*, 930 A.2d at 1275. "[A] petitioner is entitled to counsel throughout the collateral proceedings, including the appellate process," and this representation includes the filing of a notice of appeal or a petition for allowance of appeal, whichever is appropriate given the stage of the appellate process. *Commonwealth v. Williamson*, 21 A.3d 236, 242 (Pa. Super. 2011). Counsel's failure to advise a petitioner of the disposition of a PCRA petition and discuss whether the petitioner wants to appeal the decision constitutes abandonment of the petitioner. *Id.* at 241-242; *see also Bennett*, 930 A.25 at 1275; *Commonwealth v. Rosa*, 2019 WL 4052452,

at *2 (Pa. Super. Aug. 28, 2019) (unpublished judgment order) (stating that, PCRA counsel's failure to inform a petitioner of the denial of his or her petition or discuss whether the petitioner wants to appeal constitutes abandonment); *Commonwealth v. Melice*, 2020 WL 3639896, at *3 (Pa. Super. July 6, 2020) (unpublished memorandum) (holding that, PCRA counsel's failure to inform a petitioner of the order denying relief and, thereby, denying the petitioner the opportunity to appeal constituted abandonment).

In finding that Appellant, in the case *sub judice*, "has not raised a claim demonstrating that any new evidence actually exists to support a time-bar exception *via* counsel abandonment[,]" the PCRA court focused on whether Appellant demonstrated that he requested an appeal and that Attorney Eshbach subsequently failed to file such an appeal. PCRA Court Opinion, 3/26/21, at 9. While PCRA counsel's failure to file a requested appeal, absent justification, would certainly constitute abandonment,[17] if demonstrated, the initial inquiry in the case *sub judice* is whether Appellant established that Attorney Eshbach failed to inform him of the order denying his petition. To that end, the PCRA court stated,

> [Appellant] first claims that he did not understand whether [the PCRA] court [] ruled upon his first PCRA petition at the time of the January 30, 2019 [evidentiary] hearing. And, [al]though

---

[17] *See Commonwealth v. Markowitz*, 32 A.3d 706, 715 (Pa. Super. 2011) (observing that, "an unjustified failure to file a requested [] appeal" constitutes *per se* ineffectiveness as the petitioner is left with the functional equivalent of no counsel (original quotation marks omitted)), *appeal denied*, 40 A.3d 1235 (Pa. 2012).

[Appellant] is not credible, on this point, Attorney Eshbach also indicated that she did not think that [the PCRA] court [] ruled at the end of that hearing. We must profess ourselves confused that such confusion pervaded those proceedings. During the hearing on the instant PCRA petition, our court clerk provided [the PCRA court] with a copy of the clerk's notes from the January 30, 2019 hearing, which clearly indicates, *via* a large " X" over the box for "DENIED[,]" that [Appellant's] first PCRA petition had been denied at the [conclusion] of the hearing. Of course, Attorney Eshbach testified that, while she [] received this document from our [tipstaff], **she had not looked at it**. This caused [the PCRA court] to pull every document extant in Laserfiche[, a digital content management software,] between the January 30, 2019 hearing and the filing of the present [PCRA] petition and to cross-reference those with the docket[ ]entries in [the common pleas case management system ("CPCMS")].

The first document is the clerk's notes from January 30, 2019, which clearly [indicates Appellant's] first PCRA was denied that [same] day. There is an assessment against [Appellant] in Laserfiche and a delinquency notice against [Appellant] in CPCMS[, which was filed on February 20, 2019]. Both [] Laserfiche and CPCMS contain a February 15, 2019 e*x parte* motion for payment of counsel fees to move foreign subpoena from [Appellant], which [the PCRA court granted] on February [21], 2019. Then there is a copy of [the PCRA] court's January 30, 2019 order in both systems. The CPCMS docket indicates that proof of service of this order was [filed on] March 7, 2019. The next filing in both systems is the instant PCRA petition, which was docketed on October 2, 2020.

[The PCRA] court cannot fathom that any confusion flowed from [the January 30, 2019] order [as dictated from the bench that] clearly denied [Appellant] the relief he sought. At worst, [this dictated order] lacked the word "denied," which, though clearer, is not talismanic. The [PCRA] court held that there was no basis for relief. Moreover, [al]though Attorney Eshbach testified that she received the final order some weeks after the hearing, the order she received, as evidenced by the docket entries in Laserfiche and CPCMS, was, in fact, the exact same order that both [Appellant] and Attorney Eshbach testified had left them confused on January 30, 2019. How this same order could cause confusion on the day of the hearing, but, some weeks later, settle in their minds that the first PCRA petition had been denied is perplexing to [the PCRA] court. We put this aside. By March 7,

2019, Attorney Eshbach was certainly aware that [Appellant's] first PCRA petition had been denied.

PCRA Court Order and Opinion, 3/26/21, at 10-12 (extraneous capitalization and original emphasis omitted). Although the PCRA court did not find that Attorney Eshbach, upon receiving a copy of the order denying Appellant's PCRA petition in March 2019, informed Appellant that his petition was denied, the PCRA court found

> [Appellant] was at liberty in Baltimore[, Maryland] between January 30, 2019,] and June 10, 2019.[18] [Appellant] admitted he could have sent letters and that he had access to the internet and a [tele]phone that could send and receive [electronic] messages. In fact, [al]though Attorney Eshbach could not remember it, [Appellant] claimed to have called his counsel. Thus[,] in the three months between the time when Attorney Eshbach received the proof of service of the [January 30, 2019] order[, Appellant] could have easily discovered, through due diligence, that his PCRA [petition] had been denied. This is to say nothing of [Appellant's] ability, as a man at liberty, to contact the clerk of court[s] in York County, [Pennsylvania] during the four and one-half months from January 30, 2019[,] to June 10, 2019, and inquire as to the status of his case, or to make [additional] inquiry once [he became] incarcerated [on June 10, 2019].

*Id.* at 12-13. The PCRA court's examination of whether Appellant exercised due diligence to determine the status of his PCRA petition supports the inference that Attorney Eshbach did not inform Appellant of the January 30, 2019 order denying his PCRA petition after receiving a copy of the order in March 2019.

_____

[18] June 10, 2019 was the date Appellant became incarcerated due to unrelated criminal charges and was no longer "at liberty."

At the March 19, 2021 evidentiary hearing on the instant PCRA petition, Attorney Eshbach testified that she did not recall receiving a copy of an order either granting or denying Appellant's petition at the conclusion of the January 30, 2019 evidentiary hearing. N.T., 3/19/21, at 6, 9. Attorney Eshbach further testified that she received a "document" from the PCRA court at the conclusion of the January 30, 2019 hearing **but she "[did not] look at it**[.]" **Id.** at 9 (emphasis added). Attorney Eshbach recalled receiving a copy of the order denying Appellant's petition "some weeks later" after the January 30, 2019 hearing. **Id.** at 6. Attorney Eshbach admitted that upon receiving a copy of the order denying Appellant's petition, **she did not "reach out to" Appellant regarding the order**, and, as such, she never filed an appeal of that order. **Id.** at 6 (emphasis added). To the best of her recollection, Attorney Eshbach did not recall having any communication with Appellant after the January 30, 2019 evidentiary hearing. **Id.** at 6.

Based upon our review of the record, we discern that Attorney Eshbach abandoned Appellant when, on January 30, 2019, she received a copy of "a document" - the order denying Appellant's petition - and failed to examine the "document." If the document had been examined at the time it was received by Attorney Eshbach, upon seeing the box marked "denied," any further confusion Attorney Eshbach may have had about the status of Appellant's petition could have been dispelled upon inquiry with the PCRA court at that time. Moreover, Attorney Eshbach's abandonment of Appellant continued when, upon receiving a copy of the January 30, 2019 order denying

Appellant's petition, that copy being the same document she received at the conclusion the evidentiary hearing, she failed to notify Appellant of the denial of his petition. Therefore, Appellant sufficiently pleaded and proved a "fact" based upon Attorney Eshbach's abandonment for purposes of the newly-discovered facts exception to the PCRA jurisdictional time-bar.

Appellant contends, and the record supports that the "fact" that Attorney Eshbach abandoned him was unknown until he received an email from Attorney Eshbach "somewhere around November [2019,] or December [] 2019." N.T., 3/19/21, at 17; *see also id.* at Exhibit D1. In his testimony, Appellant refers to a December 5, 2019 email from Attorney Eshbach to Appellant's girlfriend that states, in pertinent part, as follows:

> Are you referring to CP-67-CR-532-2012 [(Appellant's criminal case)]? If so, then the case is closed and will not be reassigned by [trial] court administration. The period for appeal expired on or about March 2, 2019.

*Id.* at Exhibit D1 (extraneous capitalization omitted). Attorney Eshbach further testified that the purpose of this email was to inform Appellant, *via* communication to his girlfriend, that his case was closed and that the period in which to appeal the order denying his PCRA petition expired on March 2, 2019. N.T., 3/19/21, at 7-8. Therefore, Appellant sufficiently established that the "fact" of Attorney Eshbach's abandonment was "unknown" until December 5, 2019.

The second prong of the newly-discovered facts exception, however, requires Appellant to demonstrate that he could not have learned of this fact

earlier through the exercise of due diligence. It is well-established that "[d]ue diligence is a fact-specific concept that must be determined on a case-by-case basis." ***Commonwealth v. Hill***, 736 A.2d 578, 588 (Pa. 1999). While the exercise of due diligence does not require perfect vigilance and punctilious care, a party must demonstrate that reasonable efforts have been put forth to obtain knowledge of a "fact." ***Cox***, 146 A.3d at 230 (stating, the salient question is whether reasonable efforts were put forth to discover the facts upon which the newly-discovered facts exception is based); ***see also Hill***, 736 A.2d at 588.

Here, Appellant contends that he contacted Attorney Eshbach "once or twice" after the January 30, 2019 evidentiary hearing "regarding the status of his appeal" and that Attorney Eshbach "indicated that she was still waiting on a decision" from the PCRA court concerning Appellant's petition. Appellant's Brief at 11. Appellant asserts that, after his initial contact with Attorney Eshbach when he was informed that Attorney Eshbach was still waiting for a decision, he did not attempt to learn of the status of his PCRA petition, or its appeal, until his girlfriend contacted Attorney Eshbach in the Fall of 2019. ***Id.*** It was not until December 5, 2019, Appellant avers, that his girlfriend received the electronic mail response from Attorney Eshbach indicating that his petition had been denied, that the appeal period expired on March 2, 2019, and that his case was now closed. ***Id.***

The PCRA court found that, between March 7, 2019, when Attorney Eshbach received proof of service of the January 30, 2019 order denying his

PCRA petition, and June 10, 2019, when Appellant became incarcerated on an unrelated criminal charge, Appellant indicated that he had access to the internet and a telephone, as well as the United States postal service. *Id.* at 12. The PCRA court found that during this time period, Appellant "could have easily discovered, through due diligence, that his PCRA [petition] had been denied" by contacting Attorney Eshbach. The PCRA court further stated that "[t]his is to say nothing of [Appellant's] ability, as a man at liberty, to contact the clerk of court[s,] during the four and one-half months from January 30, 2019, to June 10, 2019, and inquire as to the status of this case or to make [additional] inquiry once incarcerated." *Id.* at 12-13 (remarking that, Appellant "has been in trouble with the law before. [He is] sure to be savvy regarding the importance of dates to successfully [file] an appeal.").

> Appellant testified that,
>
> I only called [Attorney Eshbach] once or twice after [the January 30, 2019 hearing]. She [indicated that she had not] heard [anything regarding the disposition of the PCRA petition]. Immediately after the hearing[,] after [the PCRA court judge] left the courtroom, [Attorney Eshbach] did not have an answer [regarding the disposition of the PCRA petition]. About a week later it might have been, if not give or take, I called for an update status and she had heard nothing.

N.T., 3/19/21, at 15. When asked if he contacted Attorney Eshbach any further after his initial telephone call, Appellant indicated "not until later on that year and that was through [my girlfriend.]" *Id.* Appellant testified that, after he became incarcerated for an unrelated criminal charge, "[t]here is really not a way to call out to anybody and so I had [my girlfriend] contact

- 22 -

[Attorney Eshbach, and] she ended up sending [electronic mail correspondence] and that's when we found out that [Attorney Eshbach] was no longer my attorney." *Id.* at 16. Appellant's girlfriend contacted Attorney Eshbach *via* electronic mail dated November 25, 2019, and requested information on Appellant's PCRA petition.[19] Attorney Eshbach responded that same day *via* electronic mail indicating that she was no longer employed by the law firm where she worked when she represented Appellant, that the law firm retained Appellant's case files, and that the record could be turned over to Appellant's girlfriend once she entered her appearance on behalf of Appellant.[20] Appellant's *Pro Se* PCRA Petition, 10/2/21, at correspondence dated November 25, 2019. On December 5, 2019, Appellant's girlfriend responded to Attorney Eshbach's electronic mail stating that Attorney Eshbach's former law firm indicated that she "would be the person to inquire

_____

[19] Contrary to Appellant's assertion that his girlfriend contacted Attorney Eshbach in September 2019, the electronic mail correspondence attached to Appellant's *pro se* PCRA petition is, in fact, dated November 25, 2019, and states, in pertinent part, as follows:

> I found your listing on LegalDirectories.com and wanted to contact you regarding [] information on the PCRA [petition] for [Appellant]. He is currently incarcerated at [a state correctional institution] and needs the transcripts from the last court proceedings.

Appellant's *Pro Se* PCRA Petition, 10/2/21, at correspondence dated November 25, 2019.

[20] Attorney Eshbach was under the impression that Appellant's girlfriend was an attorney-at-law, an assumption that is unsupported by the record.

about the case." *Id.* at correspondence dated December 5, 2019. Attorney Eshbach responded that same day indicating that Appellant's petition had been denied and that the period in which to file an appeal expired. *Id.*

We concur with the PCRA court, and the record supports, that Appellant did not exercise reasonable efforts to discover that his PCRA petition had been denied, that the appeal period had expired, and, as such, Attorney Eshbach had abandoned him because she failed to inform him of either of these events.[21] Aside from the telephone inquiry Appellant made to Attorney Eshbach regarding the status of his petition shortly after the January 30, 2019 evidentiary hearing, Appellant stated that he undertook no further efforts to inquire as to the status of his PCRA petition, including, *inter alia*, contacting the PCRA court directly despite having access to the means, *i.e.* telephone, internet, or postal service, by which to do so with ease until his incarceration for unrelated criminal charges in June 2019. Once incarcerated, while his ease

_____

[21] As our Supreme Court noted in **Bennett**, **supra**, an incarcerated petitioner who has been abandoned by his or her counsel on collateral appeal may have less opportunity or avenues by which to access public information, thereby, reducing the petitioner's burden of demonstrating that "reasonable efforts" were employed to discover the unknown fact. **Bennett**, 930 A.2d at 1275 (noting that, "in light of the fact that [PCRA] counsel abandoned [Bennett], we know of no other way in which a prisoner could access the "public record[,]" but permitted the PCRA court, as fact-finder, to examine, upon remand, whether the unknown fact could have been discovered through the exercise of due diligence). Thus, a PCRA court may reasonably demand more in the way of reasonable efforts employed to exercise due diligence from a petitioner who is "at liberty." **See id.** at 1272 (noting that, even while incarcerated, Bennett was able to demonstrates the steps he took to ascertain the status of his case, including writing to the PCRA court and appellate court).

of access to methods of contacting the PCRA court may have become more arduous (albeit Appellant certainly had the ability to write the PCRA court as many *pro se* litigates so often do), Appellant's girlfriend only contacted Attorney Eshbach at Appellant's request in November 2019. These efforts, as the PCRA court found, fall short of the requirements necessary to demonstrate that the unknown facts could not have been discovered sooner through the exercise of due diligence.[22]

In sum, Appellant failed to plead and prove all of the elements necessary to invoke the newly-discovered facts exception to the PCRA's jurisdictional time-bar. Consequently, the PCRA court lacked jurisdiction to review Appellant's PCRA petition, and we may not review the substance of the petition on appeal.[23]

---

[22] In his *pro se* PCRA petition, Appellant complains that Attorney Eshbach's abandonment was related to her announcement on January 11, 2019, that she was running for election to the Court of Common Pleas of York County. Appellant's *Pro Se* PCRA Petition, 10/2/20, at 3. Our disposition in this matter as it relates to jurisdiction is not to suggest that we condone Attorney Eshbach's patent abandonment of Appellant, especially in light of her admitted statement that she failed to look at "a document" handed to her by the PCRA court at the conclusion of the January 30, 2019 evidentiary hearing, a document which clearly indicated Appellant's PCRA petition had been denied. We simply concur with the PCRA court's determination that Appellant failed to exercise due diligence, under the circumstances, in his pursuit and acquisition of allegedly unknown facts.

[23] In light our disposition of Appellant's first issue, we do not address Appellant's second issue.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2022