J-S40027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER HANSON | : | |
| | : | |
| Appellant | : | No. 596 EDA 2022 |

Appeal from the PCRA Order Entered February 1, 2022
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0001582-1983

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER HANSON | : | |
| | : | |
| Appellant | : | No. 597 EDA 2022 |

Appeal from the PCRA Order Entered February 1, 2022
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0000421-1984

BEFORE: PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 28, 2023**

Appellant, Christopher Hanson, appeals *pro se* from the February 1, 2022 order of the Court of Common Pleas of Lehigh County dismissing as untimely his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The relevant facts and procedural history of this case are not at issue. Briefly, the Commonwealth charged Appellant at docket number CP-39-CR-

0001582-1983 (murder and conspiracy charges) and docket number CP-39-CR0000421-1984 (rape charge), in connection with the rape and murder of his victim. The court consolidated the docket numbers for trial. Prior to trial, Appellant's co-defendant, Timothy Seip, entered a guilty plea to third-degree murder pursuant to a plea agreement under which Mr. Seip agreed to testify against Appellant. At the conclusion of trial, a jury convicted Appellant on June 14, 1984, of second-degree murder, rape, and conspiracy to commit murder. On January 30, 1986, the trial court sentenced Appellant at both docket numbers to an aggregate term of life imprisonment. This Court affirmed the judgment of sentence on August 31, 1987, and our Supreme Court denied allowance of appeal on March 23, 1988. *See Commonwealth v. Hanson*, 486 PHL 86 (Pa. Super. 1987), *appeal denied*, 544 A.2d 1341 (Pa. 1988).

From 1988 to 2020, Appellant filed approximately 15 petitions for post-conviction collateral relief, none of which have garnered him relief. On October 26, 2021, Appellant filed the instant PCRA petition, which the PCRA court denied on February 1, 2022. This appeal followed.

On appeal, Appellant raises the following question for our review:

Did the PCRA court err in summarily dismissing Appellant's petition without a hearing pertaining to unknown facts, 42 Pa.C.S.A. § 9545(b)(1)(ii); governmental interference, 42 Pa.C.S.A. § 9545(b)(1)(i); after discovered facts, 42 Pa.C.S.A. § 9543(A)(2)(vi), and by not following the Pennsylvania Supreme Court's directive in Commonwealth v. Small, 239 A.3d 1267 (Pa. 2020) pertaining to the public record presumption?

- 2 -

Appellant's Brief at 4.

> When reviewing the propriety of an order pertaining to PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. However, we afford no such deference to the post-conviction court's legal conclusions. We thus apply a *de novo* standard of review to the PCRA [c]ourt's legal conclusions.

*Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless an exception to timeliness applies. 42 Pa.C.S.A. § 9545(b)(1).[1] "The PCRA's time restrictions are jurisdictional in nature. Thus, if a PCRA petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. (Frank) Chester*, 895 A.2d 520, 522 (Pa. 2006) (internal citations and quotation marks omitted) (overruled on other grounds by *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020)). As timeliness is separate and distinct from the merits of Appellant's underlying claims, we first determine whether this PCRA petition

---

[1] The one-year time limitation can be overcome if a petitioner (1) alleges and proves one of the three exceptions set forth in Section 9545(b)(1), and (2) files a petition raising this exception within one year of the date the claim could have been presented, *see* 42 Pa.C.S.A. § 9545(b)(2).

is timely filed. ***Commonwealth v. Stokes***, 959 A.2d 306, 310 (Pa. 2008).

If it is not timely, we cannot address the substantive claims raised in the

petition. ***Id.***

The instant PCRA petition is facially untimely.[2] Appellant argues,

however, that he meets the governmental interference timeliness exception,

as set forth in 42 Pa.C.S.A. § 9545(b)(1)(i), and the newly-discovered fact

exception, as set forth in 42 Pa.C.S.A. § 9545(b)(1)(ii).[3] We disagree.

Section 9545(b), in relevant part, reads:

(1)   Any petition under this subchapter, including a second or
      subsequent petition, shall be filed within one year of the
      date the judgment becomes final, unless the petition alleges
      and the petitioner proves that:

    (i)        the failure to raise the claim previously was the result
               of interference by government officials with the
               presentation of the claim in violation of the

---

[2] Appellant was sentenced on January 30, 1986. We affirmed Appellant's judgment of sentence on August 31, 1987 and our Supreme Court denied further review on March 23, 1988. Thus, Appellant's judgment of sentence became final on June 21, 1988, when the time for Appellant to file a petition for writ of certiorari with the United States Supreme Court expired. ***See*** 42 Pa.C.S.A. 42 Pa.C.S.A. § 9545(b)(3); U.S. Sup. Ct. R. 13. Appellant had one year from June 21, 1988, to file a timely PCRA petition. Accordingly, the instant *pro se* PCRA petition, which was filed on October 26, 2021, is patently untimely. ***See*** 42 Pa.C.S.A. § 9545(b)(1).

[3] In his PCRA petition, Appellant raises several arguments in support of the timeliness of his petition. On appeal, however, it appears that Appellant focuses on two grounds to overcome the facial untimeliness of the underlying PCRA petition: governmental interference and newly-discovered facts. We note, however, that the facts and the arguments supporting these two grounds, as laid out in the petition, do not match the facts and the arguments as set forth in this appeal. As discussed below, any claims raised for the first time on appeal are waived.

> Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

42 Pa.C.S.A. § 9545(b)(1)(i)-(ii).

"The governmental interference exception permits an otherwise untimely PCRA petition to be filed if it pleads and proves that 'the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]'" *Commonwealth v. Staton*, 184 A.3d 949, 955 (Pa. 2018). This exception requires a petitioner to "show that but for the interference of a government actor 'he could not have filed his claim earlier.'" *Id*.

In his brief before us, Appellant provides no facts that would support a finding of governmental interference. Similarly, in the underlying PCRA petition, Appellant fails to identify any fact supporting the allegation. *See* PCRA Court Order, 12/9/21, at 1 n.1.

In his reply brief, Appellant seems to argue that in his 2018 unsuccessful PCRA petition,[4] he attempted to litigate the timeliness argument now

---

[4] The 2018 petition was Appellant's fourteenth PCRA petition. *See Commonwealth v. Hanson*, No. 43 EDA 2019, unpublished memorandum (Pa. Super. filed September 9, 2019).

advanced in the instant petition/appeal, but that our Court prevented him from doing so by raising *sua sponte* a **Walker**[5] issue. In other words, Appellant argues that the proper discharging of our duties qualified as governmental interference.

We are not aware of any authority that would support Appellant's argument, nor does Appellant cite to any. It also is worth noting that our Supreme Court denied Appellant's petition for allowance of appeal from our decision. The governmental interference claim is therefore meritless on its face.

Regarding the newly-discovered facts exception, we note that Appellant, before the PCRA court, argued that the discovery of a recent case, **Commonwealth v. Yale**, 249 A.3d 1001 (Pa. 2021),[6] qualified as a newly-discovered fact. The PCRA court properly denied relief because "it is well established that judicial decisions do not constitute 'facts' under Section 9545(b)(1)(ii)." Order, 12/9/21, at 2, n.1 (citing **Commonwealth v. Watts**, 23 A.3d 980, 987 (Pa. 2011)). We agree.

---

[5] **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). In **Walker**, our Supreme Court held that appellants are required to file separate notices of appeal when a single order resolves issues arising on more than one lower court docket. The decision applies to all appeals filed after June 1, 2018.

[6] **Yale** holds that where a third party is charged or convicted of crimes similar to those with which the accused is charged, evidence of those charges may be admissible to negate the accused's guilt.

Appellant also argues for the first time, a different "newly-discovered" fact. Appellant claims that on March 14, 2018, he received a copy of an article that ran in *The Morning Call* on March 21, 1986, which suggested that Seip provided testimony at a post-conviction hearing held on March 20, 1986, which was inconsistent with the testimony Seip provided at Appellant's trial. The claim is waived because "[i]ssues not raised in the [PCRA] court . . . cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Even if not waived, Appellant would not be entitled to relief. The newly-discovered facts exception requires a petitioner to plead and prove, by a preponderance of the evidence, that (1) the facts upon which the claim was predicated were unknown, and (2) the facts could not have been ascertained by the exercise of due diligence. *See Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017).

Here, Appellant did not plead or prove that the new "fact" alleged here was unknown to him, nor could he do so. Indeed, the inconsistency alleged now has been previously litigated and/or known to Appellant. This Court previously considered and rejected Appellant's effort to invoke the previously unknown fact exception based upon Seip's plea deal.[7]

_____

[7] While the contours of the claim have morphed through the years, the claim itself remains the same. Specifically, Appellant claims that the Commonwealth offered Seip a "secret" plea deal, which had not been disclosed at Appellant's trial. What changed through the years is how Appellant learned of the alleged "secret" plea deal. In 2007, Appellant learned of the "secret"
*(Footnote Continued Next Page)*

- 7 -

In 2009, we determined that Seip's plea deal agreement

> was placed on the record before the judge, indicating that Seip in exchange for his open plea to third[-]degree murder would testify for the prosecution in Appellant's case. Attorney Tomsho, the assistant district attorney [(ADA)], made clear that the agreement did not include any terms with regard to sentencing, which was entirely left to the discretion of the court, that is, Seip could receive a term of imprisonment of 10 to 20 years, which in fact he did receive subsequent to Appellant's trial. It is evident from Seip's responses at the time of his plea colloquy that he understood that the sentencing court had discretion with regard to his sentencing and that he

_____

deal from Thomas Hughes, a corrections counselor working at the facility where Seip was housed. *See Commonwealth v. Hanson*, 1326 EDA 2008, unpublished memorandum (Pa. Super. filed July 20, 2009). In 2009, Appellant learned of the "secret" deal from Attorney Colie Chapelle, the attorney for the victim's family. *See Commonwealth v. Hanson*, 1877 EDA 2012, unpublished memorandum (Pa. Super. filed June 27, 2013). In 2014, Appellant learned of the same "secret" deal from Seip himself. *See Commonwealth v. Hanson*, 2275 EDA 2014, unpublished memorandum (Pa. Super. filed April 17, 2015). In 2015, Appellant learned of the same "secret" deal from Attorney Chappelle. *See Commonwealth v. Hanson*, 2919 EDA 2016, unpublished memorandum (Pa. Super. filed June 27, 2017). In the petition underlying the instant appeal, filed in 2018, Appellant learned of "inconsistencies" regarding the plea deal from an article that ran in 1986 in a newspaper. The article seems to suggest that Seip, at a post-conviction hearing, may have described his plea deal with the Commonwealth in terms inconsistent with his testimony at trial.

Whether Appellant focuses on the secrecy or the discrepancies, the claim pertains to the same matter, *i.e.*, whether Seip's plea deal, as disclosed at Appellant's trial, represents the entire agreement between the Commonwealth and Seip. The question has been addressed several times, and we have consistently held that there was no secret agreement between Seip and the Commonwealth, that the terms of the agreement reached by the Commonwealth and Seip were fully disclosed at Appellant's trial, and that Seip's hope or expectation of a lenient sentence were not part of the plea agreement.

> could be given a sentence of 10 to 20 years, which in fact he did receive subsequent to Appellant's trial.

*Hanson*, 2919 EDA 2016, at *6 (quoting *Hanson*, 1326 EDA 2009).

Thus, the record is clear that there was no secret plea deal between Seip and the Commonwealth, that the plea Seip entered on the record is a full and accurate representation of the agreement he reached with the Commonwealth, and, that Appellant is fully aware of its nature.[8]

We have also addressed the alleged inconsistencies in Seip's testimony about the plea deal. Quoting the PCRA court opinion, we noted:

> While [Seip] was confined at the state penitentiary serving his prison sentence, he made statements that conflicted with his trial testimony pertaining to what he was promised as a sentence in return for his cooperation against [Appellant]. While [Seip] was serving his sentence, he prepared a petition under the now repealed Post Conviction Hearing Act [("PCHA")], with the aid of a fellow prisoner. At the hearing on the PCHA petition, [Seip] gave false testimony that he was promised a state confinement sentence of no more than 5 to 10 years in return for his cooperation against [Appellant]. His motivation for testifying falsely on that point was to succeed on his PCHA petition and to receive a reduced sentence.

_____

[8] For Appellant's benefit, it is worth noting that

> Seip actually testified at Appellant's February 19, 2008 PCRA hearing, during which he discussed his plea negotiations with the Commonwealth. Specifically, at said hearing, Seip was called to testify as Appellant's own witness, about Seip's plea negotiations with the Commonwealth. Appellant repeatedly asked Seip whether he received a promise of a five to ten year sentence from the Commonwealth in exchange for testifying against Appellant, to which Seip responded in the negative.

*Hanson*, 2275 EDA 2014, at *10 (emphasis omitted) (citations to the record omitted).

On approximately August 14, 2003, [Seip] was a prisoner at SCI Retreat. Thomas Hughes was his corrections counselor. On that date, [Seip] was in the process of attempting to be reparoled. Mr. Hughes told him that he had little chance of being reparoled. [Seip] became angry and stated that he was told by Attorney Makoul [Seip's trial counsel] that he would receive a 5 to 10 year prison sentence in return for his testimony against [Appellant]. [Seip] said he was told this "behind the scenes by Attorney Makoul. At that point, Mr. Hughes did not yet know [Appellant.] [Seip] told Mr. Hughes that because of his secret deal, he should be getting out of prison. [Seip] also made similar statements on a number of occasions to a cellmate, Michael J. Nalaschi.

[Seip] wrote two letters to [ADA] Tomsho in which [Seip] made various arguments as to why his sentence should be reduced. In the letter [Seip] did not refer to a secret deal alleged by [Appellant] in this PCRA proceeding.

*Hanson*, 1326 EDA 2008, at *7-8 (quoting PCRA Court Opinion, 3/27/08, at 8).

The PCRA court concluded, and we agreed, that

[Seip] may have made the statements to Mr. Hughes and Mr. Nalaschi that they attribute to him. [Seip]'s motivation at that point was to be released from prison short of the 20 year sentence that he received. However, if the statements were made by [Seip], they were false. He would have known they were false. They were not based upon anything said to him by the prosecutor or by his own attorney[.] They were motivated by the desire that he had at that point that the statements were made, namely, an early release from prison.

*Id.* at *16 (quoting PCRA Opinion, 3/27/08, at 11).

In the most recent PCRA petition, filed in 2021, Appellant alleges that he learned from a 2018 newspaper article that Seip provided testimony at a PCHA hearing regarding his plea that was inconsistent with Seip's testimony at trial. Appellant once again is challenging the very same issue, hoping that

- 10 -

some cosmetic changes on how he presents it will garner different results. It does not.[9] Accordingly, the inconsistencies in Seip's representations of the terms of his own plea agreement, alleged here for purposes of the Section 9545(b)(1)(ii) exception, were known to Appellant.[10] As such, Appellant cannot rely on the newly-discovered facts exception.

Appellant also argues that he is entitled to relief based on Section 9543(a)(2)(vi), which provides that a conviction or sentence resulted from the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." Section 9543(a)(2)(vi) identifies the grounds upon which relief can be granted. However, Appellant must first plead and prove that the underlying PCRA petition is timely. **See**, **e.g.**,

_____

[9] To the extent Appellant focuses on the newspaper article as opposed to the facts upon which his claim is predicated, we note that the "focus of the exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008) (emphasis and alteration in original) (citation omitted). Appellant's use of the newspaper is just "another conduit for the same claim [, which] does not transform his latest source into evidence falling within the ambit of [Section] 9545(b)(1)(ii)." **Id**. (citation omitted).

[10] As noted above, not only has Appellant been aware of the inconsistencies for many years, but he also was aware that the issue had been litigated, repeatedly, before the PCRA court and our Court, and that the issue had no merit, as evidenced by the fact that PCRA court and our Court, repeatedly, denied Appellant relief on that ground. Yet, despite the above, in 2021, Appellant argued, once again, that the inconsistencies in Seip's testimony constituted a "newly-discovered" fact for purposes of the Section 9545(b)(1)(ii) exception.

- 11 -

*Commonwealth v. Cox*, 146 A.3d 211, 229 n.11 (Pa. 2016). Having failed to prove the timeliness of the underlying petition, we cannot entertain the merits of this argument.

Finally, Appellant relies on *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020), apparently to argue that the PCRA court erred in crediting him with knowledge of the actual content of Seip's testimony at the PCHA hearing on March 20, 1986. *Small* stands for the proposition that an inmate may not be presumed to have knowledge of facts in the public record. *Small*, however, requires an analysis of petitioner's knowledge, not that of the public at large. *Id.* at 1283. Here, Appellant's knowledge of Seip's inconsistent testimony is well-documented as the inconsistency has been the main issue in several of Appellant's prior PCRA petitions, starting from 2007. *See*, *e.g.*, *Hanson*, 1326 EDA 2008. Thus, because *Small* is distinguishable, reliance on *Small* is misplaced.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023